

Switch Client ⋮ Preferences ⋮ Feedback ⋮ Sign Off ⋮ ？ Help

My Lexis™ ⌐ Search ⌐ Research Tasks ⌐ Search Advisor ⌐ Get a Document ⌐ Shepard's® ⌐ Alerts                    History ⋮ 🖳

FOCUS™ Terms [                                                              ] Go →  FOCUS Options...

View: **Full** | Custom                    ◁◁◁◁◁ 1 of 1 ▷▷▷▷▷                    Print | Download | Fax | Email | Text Only
                              More Like This | More Like Selected Text | Shepardize® | TOA
                              ⚠ Burch v. WDAS AM/FM, 146 Lab. Cas. (CCH) P34,552                    Pages:   24

Service:  **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 12290**

*2002 U.S. Dist. LEXIS 12290, *; 146 Lab. Cas. (CCH) P34,552;*
*7 Wage & Hour Cas. 2d (BNA) 1670*

JOE BURCH and ROSETTA BURCH v. WDAS AM/FM, AM.FM INC. and LARRY JENNINGS

CIVIL ACTION No. 00-4852

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 12290; 146 Lab. Cas. (CCH) P34,552; 7 Wage & Hour Cas. 2d (BNA) 1670

June 28, 2002, Decided
June 28, 2002, Filed; July 1, 2002, Entered

**DISPOSITION: [*1]** Defendants' motion for summary judgment granted.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendants, a former employer, its parent company, and a former supervisor, moved for summary judgment in plaintiff former employee's action alleging race discrimination in violation of Title VI of the of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and 42 U.S.C.S. § 1981, and alleging violation of the Family and Medical Leave Act, retaliatory discharge, and defamation.

**OVERVIEW:** The court initially held that the former employee could not sustain his Title VI of the of the Civil Rights Act of 1964 (Title VI) claim because defendants never received federal funding, which was a prerequisite to a Title VI claim. The court then held that, because the former employee never filed a complaint with the Equal Employment Opportunity Commission or the state commission, he could not maintain his Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., claim. The court further held that the former employee failed to establish a prima facie case of racial discrimination in violation of 42 U.S.C.S. § 1981, and failed to present competent evidence from which one could reasonably find that the stated reasons for his termination were incredible and unworthy of belief. The court finally held that the former employee was never denied leave under the Family and Medical Leave Act (FMLA), that his termination was enacted prior to his request for FMLA leave, that his employment was at-will, and that the statements he claims were defamatory were published by himself.

**OUTCOME:** Summary judgment was granted to the former employer, its parent company, and the former supervisor.

**CORE TERMS:** sales manager, termination, station, competent evidence, e-mail, quota, staff, at-will, monthly, terminated, reasonably find, protected class, account executive, summary judgment, surgery, decisionmaker, defamatory, promoted, decision to terminate, wrongful discharge, present evidence, prima facie case, federal

funds, discriminatory, recipient, proffered, eligible, manager, pretext, uncontroverted

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard 

*HN1* In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Only facts that may affect the outcome of a case are material. All reasonable inferences from the record are drawn in favor of the non-movant. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN2* Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies

*HN3* Filing a charge of discrimination with the Equal Employment Opportunity Commission or a state commission is a prerequisite for adjudication of a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., claim. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1964

*HN4* Receipt of federal funding is essential element of a Title VI of the of the Civil Rights Act of 1964 claim. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985)

*HN5* To sustain a 42 U.S.C.S. § 1981 discrimination claim, a plaintiff must show that the defendant intentionally discriminated against him because of race in the making, performance, enforcement or termination of a contract or for such reason denied him the enjoyment of the benefits, terms or conditions of the contractual relationship. The elements of employment discrimination under 42 U.S.C.S. § 1981 are the same as those for a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., claim. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

*HN6* A plaintiff can sustain a claim of employment discrimination by presenting direct evidence of discrimination or by using circumstantial evidence which satisfies the McDonnell Douglas requirements. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985) 

*HN7* The McDonnell Douglas analytic framework for Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., claims also applies to employment discrimination claims under 42 U.S.C.S. § 1981. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN8* Direct evidence is overt or explicit evidence which directly reflects a discriminatory bias by a decisionmaker. Where it appears from such evidence that illegal discrimination was a substantial factor in an adverse employment decision, the burden shifts to the defendant to show that the decision would have been the same absent consideration of the illegitimate factor. Where the plaintiff does not present such direct evidence of discrimination, he may survive summary judgment on a McDonnell Douglas pretext theory. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

*HN9* The plaintiff must first establish a prima facie case of employment discrimination by showing that he was a member of a protected class, he was qualified for the job he held, he was discharged, and he was replaced by a person not in the protected class, or otherwise present evidence sufficient to support an inference of unlawful discrimination. The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

*HN10* On a claim of employment discrimination, if the employer proffers a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff may still prevail by demonstrating that the employer's proffered reasons were not its true reasons but rather a pretext for unlawful discrimination. The plaintiff must present evidence from which a factfinder could reasonably disbelieve the employer's proffered reasons from which it may then be inferred that the real reason was discriminatory, or otherwise present evidence from which one could reasonably find that unlawful discrimination was more likely than not a determinative cause of the employer's action. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

*HN11* On a claim of employment discrimination, to discredit a legitimate reason proffered by the employer, a plaintiff must present evidence demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in that reason that one could reasonably conclude it is incredible and unworthy of credence, and ultimately infer that the employer did not act for the asserted non-discriminatory reasons. The ultimate burden of proving that a defendant engaged in intentional discrimination remains at all times on the plaintiff. More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination

HN12 Where the decision to terminate a plaintiff was made by someone who had promoted him to the position and by someone who is a member of the same protected class who then selected someone else in that class to replace the plaintiff, although it does not per se foreclose a claim of discrimination, it certainly does not help to sustain the plaintiff's claim. That the decisionmaker is of same race as the plaintiff considerably undermines the probability that race was a factor. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

HN13 Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination. A plaintiff must produce evidence that other relevant employees were similarly situated in all respects to show disparate treatment. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave 

HN14 The Family and Medical Leave Act entitles an eligible employee to take twelve work weeks of unpaid leave during any twelve-month period to care for a spouse who has a serious health condition. 29 U.S.C.S. § 2612(a)(1)(C). A serious health condition includes an illness, injury, impairment, or condition which involves inpatient care in a hospital. 29 U.S.C.S. § 2611(11)(A). More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

HN15 The Family and Medical Leave Act (FMLA) makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA, 29 U.S.C.S. § 2615(a), or to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA, 29 U.S.C.S. § 2615(b), and permits an affected employee to bring a civil action against an employer who violates 29 U.S.C.S. § 2615. 29 U.S.C.S. § 2617(a)(1). More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

HN16 When taking leave under the Family and Medical Leave Act (FMLA), the employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave. 29 C.F.R. § 825.302(c) (1995). Notice is sufficient if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave 

HN17 To sustain on a claim of wrongful denial or interference with the right to take requested leave, a plaintiff must prove that he was an eligible employee, that the defendant was an employer within the meaning of the Family and Medical Leave Act (FMLA), that he was entitled to leave under the FMLA, and that the employer interfered with his right to take leave or otherwise wrongfully denied the requested leave. An employer may interfere with the exercise of an employee's rights by discouraging an employee from using leave. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

*HN18* An employer is anyone engaged in commerce who employs 50 or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 U.S.C.S. § 2611(4)(A)(i). "Employer" includes any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer. 29 U.S.C.S. § 2611(4)(A)(ii)(I). Courts find that employee supervisors may thus be sued under the Family and Medical Leave Act. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave 

*HN19* Under the Family and Medical Leave Act, an employee who has been employed for at least twelve months by the employer from whom leave is requested is an eligible employee, however, excluded is any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50. 29 U.S.C.S. § 2611(2)(A). More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

*HN20* To establish a prima facie claim of retaliation under the Family and Medical Leave Act (FMLA), a plaintiff must show that he engaged in a statutorily protected activity, that he suffered an adverse employment action, and a causal connection between the adverse employment action and the exercise of his rights under the FMLA. In the absence of direct evidence of the employer's intent, courts apply the McDonnell Douglas burden shifting framework. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

*HN21* At least when it is particularly suggestive, the temporal proximity of a plaintiff's protected conduct and his termination can raise an inference that there is a causal link between the two. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment

*HN22* In Pennsylvania, at-will employees may be terminated at any time and for any reason or no reason. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment 

*HN23* Great clarity is necessary to overcome the at-will presumption. A plaintiff bears the burden to produce clear and convincing evidence that the parties intended an employment relationship of a definite length. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Employment Relationships > At-Will Employment

*HN24* That a plaintiff was promised a specified annual salary does not overcome the at-will presumption. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment

Labor & Employment Law > Wrongful Termination > Public Policy 

*HN25* An at-will employee may pursue relief for wrongful discharge where the termination violates clear public policy. The public policy exception, however, is interpreted narrowly. A discharge violates public policy only when it thwarts the administration of a commonwealth agency or statutory mechanism, or undermines a statutory obligation of the employer or employee. It is applicable where an employee has been required to commit a crime, prevented from complying with a statutory duty or discharged in violation of a specific statutory prohibition. In any event, the public policy exception applies only where there is no available statutory means of vindicating the policy in question.  More Like This Headnote

Torts > Defamation & Invasion of Privacy > Defamation Actions 

*HN26* To sustain a claim for defamation, a plaintiff must show the defamatory character of the communication; publication by the defendant, application to the plaintiff, the understanding of the recipient of its defamatory meaning, the understanding of the recipient that it was intended to apply to the plaintiff, special harm to the plaintiff from its publication, and abuse of any conditionally privileged occasion. Pa. Cons. Stat. Ann. § 8343(a). To recover damages, a plaintiff must also prove that the statement results from some fault on the part of the defendant.  More Like This Headnote

Torts > Defamation & Invasion of Privacy > Defamation Actions 

*HN27* A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him. An allegedly defamatory statement must also be viewed in context to assess the effect it is fairly calculated to produce and the impression it would ordinarily create with those among whom it is intended to circulate. A communication is not defamatory because it may embarrass or annoy the person to whom it refers.  More Like This Headnote | *Shepardize: Restrict By Headnote*

Torts > Defamation & Invasion of Privacy > Defamation Actions 

*HN28* Statements critical of an employee's job performance are generally not capable of defamatory meaning.  More Like This Headnote

Torts > Defamation & Invasion of Privacy > Common Law Privileges 

*HN29* A communication may be privileged when made by one of several persons having a common interest in a particular subject matter to others sharing that interest which he reasonably believes they are entitled to know.  More Like This Headnote

**COUNSEL:** For JOE BURCH, ROSETTA BURCH, PLAINTIFFS: DEMETRIUS J. PARRISH, JR., LAW OFFICES OF DEMETRIUS J. PARRISH, JR., PHILADELPHIA, PA USA.

For WDAS AM/FM, AM.FM, INC., LARRY JENNINGS, DEFENDANTS: PETER A. GOLD, BLANK ROME COMISKY & McCAULEY LLP, PHILADELPHIA, PA USA.

For WDAS AM/FM, AM.FM, INC., LARRY JENNINGS, DEFENDANTS: RICHARD S. SWARTZ, BLANK ROME COMISKY & MC CAULEY, PHILA, PA USA.

**JUDGES:** JAY C. WALDMAN, J.

**OPINIONBY:** JAY C. WALDMAN

**OPINION: MEMORANDUM**

**WALDMAN, J.**

**June 28, 2002**

### I. Introduction

Plaintiff has asserted claims for racial discrimination under Titles VI & VII and 42 U.S.C. § 1981 against his former employer, its parent corporation and its general sales manager. He has also asserted claims of interference with rights protected under the Family and Medical Leave Act ("FMLA") and retaliatory discharge for exercising those rights. Plaintiff has asserted additional supplemental state law claims for breach of contract, wrongful discharge and defamation. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n1 Rosetta Burch, Joe Burch's wife, is referenced in the caption of the complaint, however, no specific claim is pled on her behalf or referenced in any of the parties' submissions. The complaint refers repeatedly to "Plaintiff" in the singular. In one sentence of a lengthy complaint, there is an allegation that "Plaintiff and his wife's relationship suffered due to Plaintiff's inability to cooperate or due to Plaintiff's personal suffering." This conceivably could represent an attempt to assert a claim on behalf of Mrs. Burch for loss of consortium although that term is never used and the sentence is surrounded by allegations of the affect of defendants' actions on Mr. Burch. In any event, whether the drafter was attempting to present such a claim is immaterial to the court's analysis. The court refers to plaintiff Joe Burch in the singular.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*2]

Presently before the court is defendants' motion for summary judgment.

### II. Legal Standard

$^{HN1}$In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986). Only facts that may affect the outcome of a case are "material." Anderson, 477 U.S. at 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505. All reasonable inferences from the record are drawn in favor of the non-movant. See 477 U.S. 242 at 256.

$^{HN2}$Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990) [*3] (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)), cert. denied, 499 U.S. 921 (1991). A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. Anderson, 477 U.S. 242 at 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); Woods v. Bentsen, 889 F. Supp. 179, 184 (E.D. Pa. 1995).

### III. Facts

From the competent evidence of record, as uncontroverted or otherwise taken in the light most favorable to plaintiff, the pertinent facts are as follow.

Plaintiff Joe Burch is an African American man. He was hired by defendant WDAS in July 1989 as a senior account executive and served in this capacity for eight years. The account executives were responsible for generating revenue for the station by selling units of time for advertising. WDAS AM/FM is a Philadelphia radio station licensed by the Federal [*4] Communications Commission and a subsidiary of defendant AM.FM, Inc., a New Jersey corporation. More than 80% of its full-time employees are African American.

During plaintiff's tenure as a senior account executive, he was a top performer. In July 1997, he applied for and was promoted to the newly created position of local sales manager. The promotion decision was made by Kim Dziabis, a Caucasian woman who was then the general sales manager. Mr. Burch continued to work in this capacity until his termination on March 24, 2000.

WDAS sells units of advertising through two departments, the national sales department and the local sales department. n2 The general sales manager oversees both departments and is responsible for balancing the revenue generated from national and local sales.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 E. Stephen Collins was the National Sales Manager at all times relevant to this lawsuit.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As local sales manager, Mr. Burch was primarily responsible for coaching and leading a sales staff of twelve account executives in achieving **[*5]** monthly and quarterly sales quotas. He was also responsible for approving individual orders and providing incentives to account executives for outstanding work.

Prior to the creation of the local sales manager position, Ms. Dziabis, as general sales manager, was primarily responsible for achieving the monthly sales quotas. In 1995 and 1996, local sales failed to meet the monthly quotas. In 1997, local sales only met the quota twice. Overall sales at the station, however, were good.

In September 1998, Charles Warfield, an African American man who was the general station manager, promoted Ms. Dziabis to the position of Director of Sales. n3 In the nine months preceding her promotion, the station as a whole achieved the monthly sales quotas seven times. Defendant Larry Jennings, an African American man who had previously served as general sales manager at stations in Charlotte, North Carolina, was hired as general sales manager to fill the vacancy created by the promotion of Ms. Dziabis.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 In this capacity she was responsible for sales at six AM.FM stations in Philadelphia.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*6]**

In the fall of 1998, Mr. Jennings was informed by corporate headquarters that each Philadelphia station was required to create a new position of director of market development and to fill the position by the beginning of 1999. Chancellor Marketing Group, a subsidiary of AM.FM, defined the position and the talents that the person hired was expected to have. Mr. Jennings conducted initial interviews of candidates and those who appeared to be suitable were then interviewed by Ms. Dziabis and two executives of Chancellor Marketing. These three interviewers then met to discuss the candidates and make a selection.

Two finalists, Debbie Kessler, a Caucasian woman, and Marie Tolson-Perry, an African American woman, were asked to complete talent profiles used for predicting an applicant's suitability for a particular job. Of the twenty-two attributes analyzed, Ms. Tolson-Perry achieved a higher score in nine categories, Ms. Kessler scored higher in seven categories and both candidates achieved identical results in six categories. After the process was completed, Ms. Kessler was offered the position. Mr. Jennings did not participate in the decision to select Ms. Kessler.

Under Mr. Butch, **[*7]** local sales met the monthly quota seven months in 1998 and four of the first five months in 1999. From June 1999 until Mr. Burch was terminated in March 2000, however, local sales failed to meet the quota each and every month. Local sales failed to achieve the sales quota in 22 of the 34 months during which plaintiff was local sales manager.

While general sales manager, Ms. Dziabis discussed problems with local sales with plaintiff. A few months after Mr. Jennings took over in September 1998, he expressed concerns to Ms. Dziabis about plaintiff's ability to be an effective local sales manager. In June 1999, Mr. Jennings began performing certain duties for which plaintiff had previously been responsible. Mr. Jennings told Mr. Burch that he should no longer determine pricing, provide sales leads, give out bonuses or sign sales orders. Mr. Burch perceived that Mr. Jennings relieved plaintiff of this authority because he wanted to let everybody know that he was in charge and was jealous of Mr. Burch's good relationship with the WDAS staff and advertising community.

In October and November of 1999, Mr. Jennings sent plaintiff detailed e-mails expressing concern over the failure

to achieve [*8] local sales quotas and asking him to make changes in his coaching and management style to achieve better results.

In an e-mail sent on October 27, 1999, Mr. Jennings related that accountability had been an area of pronounced weakness in plaintiff's performance all year. He advised Mr. Burch that the sales people "require a strong, well-focused and individualized approach to coaching and leadership." Mr. Jennings warned that "unless things get turned around in a hurry, I'll be forced to become more hands on with Local. I don't see that as a positive if I have to get more involved in helping you do your job. It will call into question your management talent and in the long run cost you this golden opportunity. I'd hate to see that happen."

In a November 7, 1999 e-mail, Mr. Jennings reminded plaintiff that "you may recall from our meeting with Chester a few weeks ago (the one regarding October's Local performance), he made several thinly veiled references to the two us being at risk as a result of Local sales performance" and advised that "the real key to delivering the quarter will still boil down to how closely you work with and monitor individual performance."

Chester Schofield [*9] had taken over as general manager of WDAS in August 1999. Plaintiff complained that Mr. Jennings was not permitting him to do his job. Mr. Schofield said that he would put together a formal job description detailing the respective roles of Mr. Jennings and plaintiff. Mr. Schofield left the station in January 2000. With Mr. Schofield's departure, plaintiff explains there was nobody to whom he could complain and it "was just a matter of time" before he expected to be terminated.

Mr. Jennings met with plaintiff in February 2000 to discuss particular concerns with the performance of local sales and ways to improve that performance. He then sent an e-mail to Mr. Burch outlining the key points of discussion.

In e-mails dated February 10 and February 15, 2000, Mr. Jennings expressed concern about meeting the first quarter quota. In the February 15th e-mail, he also expressed concerns about holding the sales staff accountable for their responsibilities. In an e-mail of February 29, 2000, Mr. Jennings identified six account executives who were under-performing and reminded plaintiff of tactics they had discussed to improve their performance. He urged that Mr. Burch "work more closely than [*10] you ever have before to ensure that each account executive receives the attention they require." In e-mails of March 3 and March 11, 2000, Mr. Jennings reminded plaintiff that his end of the month reports for February were overdue.

Mr. Jennings presented Mr. Burch with a performance and compensation plan on February 15, 2000. The plan contains three parts: responsibilities, performance expectations and compensation. The responsibilities section contained a formalized description of the responsibilities of local sales manager including achieving sales goals, reviewing and approving local sales orders, assigning sales leads, providing a monthly lead report to the general sales manager, managing the sales staff by conducting individual focus meetings as well as informal monthly performance reviews and formal quarterly performance reviews, recommending staffing changes and documenting vacation days and absences. The performance expectations section listed in table form the monthly and quarterly gross revenue goals. The compensation section specified plaintiff's salary for the year and provided for incentive pay should certain performance goals be met.

On or shortly before February 28, 2000, Mr. [*11] Jennings and Ms. Dziabis discussed plaintiff's failure to perform to expectations. Together, they decided to terminate plaintiff's employment and had Rosemarie Galie, the WDAS business manager, contact corporate headquarters to obtain a severance package. Ms. Galie confirms that she was advised of the decision "in or about the end of February 2000."

Rosetta Burch had surgery on March 13, 2000. One or two days prior to the surgery, Mr. Burch sent an e-mail to Mr. Jennings in which he indicated that his priorities had changed and that he needed time off from work to be with his wife when she underwent surgery. Mr. Burch took several days off to be with his wife. Mr. Jennings did not formally respond to the e-mail, but plaintiff recollects that Mr. Jennings "probably" told him to take time off. There is no evidence that Mr. Burch was ever denied leave. Upon his return, plaintiff states he did get a "cold feeling" from Mr. Jennings. Of course, unknown to plaintiff, Mr. Jennings had decided more than two weeks earlier to terminate him.

Plaintiff also points to the case of Lisa Boston, who was terminated in the fall of 1999 after taking pregnancy leave. Although not required by the FMLA, [*12] WDAS provided leave with pay. Ms. Boston's leave had extended well beyond the prescribed period and she sought to secure her position for still longer. Moreover, it was not Mr. Jennings who declined to extend her paid leave or secure her position. It was Mr. Schofield who expressed concern that Mr. Jennings had let her slide and that this could create a bad precedent. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 Mr. Schofield avers that Ms. Boston was welcome to return but that she could no longer be paid while out from work and the station could not continue to hold an account list for her while also having to pay others who were actually handling the accounts. Ms. Boston apparently perceived this as an effective termination and for purposes of the instant motion the court has so assumed.

Get a Document - by Citation - 146 Lab. Cas. (CCH) P34,552

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Mr. Jennings informed plaintiff of his termination on March 24, 2000. Mr. Jennings cited plaintiff's failure to achieve sales quotas, to coach the sales staff properly and to hold his staff accountable. Mr. Jennings offered plaintiff the opportunity to frame his **[*13]** departure as a resignation by submitting a letter to that effect and to continue to work until April 7th.

At a meeting the next day with the sales staff, plaintiff advised that "it had been determined that [he] leave the station" but would remain until April 7th to assist the staff with strategic account management. Some staff members asked plaintiff after the meeting why he was leaving. Plaintiff responded that he had been fired and related the reasons given by Mr. Jennings. Plaintiff also related to staff members his belief that he was fired because he made too much money and had too good of a relationship with the staff. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 Plaintiff did not suggest that he was fired for taking family leave or because of his race. Indeed, in sworn discovery responses in this action, plaintiff variously stated that "race played no role" in his termination and at most that "race could be involved."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On March 29, 2000, plaintiff declined the offer to frame his departure as a resignation at which time Mr. Jennings asked him **[*14]** to leave immediately. Dwayne Perry, an African American male account executive, was promoted to fill the vacant local sales manager position.

Between March 24 and March 29, 2000, several employees related to plaintiff statements they said Mr. Jennings made to them regarding plaintiff's departure. Mr. Tamburro, the program director, and two sales managers, Messrs. Perry and Liles, told plaintiff that Mr. Jennings had indicated Mr. Burch was incapable of motivating and coaching his staff. Ben Hill, the chief station engineer, told plaintiff that Mr. Jennings told the managers at the station that Mr. Burch had quit and had not been able to take the station to another level. Marie Tolson told plaintiff that Mr. Jennings had opined that no one at WDAS was qualified to do that job. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 Mr. Burch contends this reported statement was defamatory because although he had been terminated, he was still at the office and thus it applied to him.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

A few weeks later, Mr. Liles and Nate Dais, another account executive, told **[*15]** plaintiff that they were told by Ms. Dziabis that she was told by Mr. Jennings that he was looking for someone who could take the staff to the next level which Mr. Burch could not do. Paula Henson, an account executive, told plaintiff that Mr. Jennings told her that he had viewed Mr. Burch as a cancer at the station.

Plaintiff states that after interviewing for a job with WPHI, another local radio station, he was told by Kevin Jones, the general sales manager, that Larry Jennings had contacted Darryl Trent, the general station manager, and indicated that Mr. Burch was bitter, hostile and unable to focus on the job.

Mr. Trent testified that he never had any discussion with Mr. Jennings or anyone else at WDAS regarding Mr. Burch. Plaintiff has presented no affidavit or testimony of Mr. Tamburro, Mr. Perry, Mr. Liles, Mr. Hill, Ms. Tolson, Mr. Dais or Ms. Henson or other competent evidence to show that Mr. Jennings made the statements that plaintiff says they told him they heard.

## IV. Discussion

### A. Race Discrimination Claims

It is uncontroverted that plaintiff has never filed a charge of discrimination with the Equal Employment Opportunity Commission or the Pennsylvania **[*16]** Human Relations Commission. *HN3* This is a prerequisite for adjudication

of a Title VII claim. See <u>Alexander v. Gardner Denver Co., 415 U.S. 36, 47, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974); Woodson v. Scott Paper Co., 109 F.3d 913, 926 (3d Cir. 1997); Trevino-Barton v. Pittsburgh Nat'l Bank, 919 F.2d 874, 878 (3d Cir. 1990)</u> ("Federal courts lack jurisdiction to hear Title VII claims unless a claim was previously filed with the EEOC").

It is also uncontroverted that WDAS is not a recipient of any federal funds. Thus, the Title VI claim also cannot survive. See <u>42 U.S.C. § 2000d; Fuller v. Rayburn, 161 F.3d 516, 517 (8th Cir. 1998)</u> (*HN4*receipt of federal funding is essential element of Title VI claim); <u>Reynolds v. School Dist. No. 1, Denver Colorado, 69 F.3d 1523, 1531 (10 Cir. 1995)</u> (plaintiff must show defendant received federal funds for primary objective of providing employment to sustain a Title VI claim); Ass'n Against Discrimination in <u>Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir.)</u> (to sustain a Title VI claim of discriminatory employment **[*17]** practices, "a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment"), cert. denied, <u>455 U.S. 988 (1981); Grimes v. Superior Home Health Care, 929 F. Supp. 1088, 1091 (M.D. Tenn. 1996)</u> ("the general prohibition of [Title VI] applies only if a defendant receives federal funds").

*HN5*To sustain a § 1981 discrimination claim, a plaintiff must show that the defendant intentionally discriminated against him because of race in the making, performance, enforcement or termination of a contract or for such reason denied him the enjoyment of the benefits, terms or conditions of the contractual relationship. See <u>Saint Francis College v. Al-Khazraji, 481 U.S. 604, 609, 95 L. Ed. 2d 582, 107 S. Ct. 2022 (1987); Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 385 (3d Cir. 1999); Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994); Mian v. Donaldson, Lufkin & Jenrette Securities, 7 F.3d 1085, 1087 (2d Cir. 1993); Williams v. Carrier Corp., 889 F. Supp. 1528, 1530 (M.D. Ga. 1995); Flagg v. Control Data, 806 F. Supp. 1218, 1223 (E.D. Pa. 1992).</u> **[*18]** The elements of employment discrimination under § 1981 are the same as those for a Title VII claim. See <u>Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999); Lewis v. University of Pittsburgh, 725 F.2d 910, 915 n.5 (3d Cir. 1983); Marion v. City of Philadelphia/Water Dep't., 161 F. Supp. 2d 381, 385 (E.D. Pa. 2001).</u> See also <u>New York Transit Authority v. Beazer, 440 U.S. 568, 583, 59 L. Ed. 2d 587, 99 S. Ct. 1355 (1979)</u> (§ 1981 "affords no greater substantive protection than Title VII").

*HN6*A plaintiff can sustain such a claim by presenting direct evidence of discrimination or by using circumstantial evidence which satisfies the McDonnell Douglas requirements. See <u>St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095-96 n.4 (3d Cir. 1995);</u> **[*19]** <u>Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994).</u> n7

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 *HN7*The McDonnell Douglas analytic framework for Title VII claims also applies to employment discrimination claims under § 1981. See <u>McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973); Patterson v McLean Credit Union, 491 U.S. 164, 186, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989)</u> (applying McDonnell Douglas framework to claims under § 1981); <u>Pamintuan, 192 F.3d at 385</u> (same); <u>Stewart v. Rutgers, The State Univ., 120 F.3d 426, 432 (3d Cir. 1997)</u> (same); <u>Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir. 1996)</u> (same).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

*HN8*Direct evidence is overt or explicit evidence which directly reflects a discriminatory bias by a decisionmaker. See <u>Armbruster v. Unisys Corp., 32 F.3d 768, 778, 782 (3d Cir. 1994).</u> Where it appears from such evidence that illegal discrimination was a **[*20]** substantial factor in an adverse employment decision, the burden shifts to the defendant to show that "the decision would have been the same absent consideration of the illegitimate factor." <u>Price Waterhouse v. Hopkins, 490 U.S. 228, 276, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989).</u> See also <u>Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1113 (3d Cir. 1997); Jones v. School Dist. of Phila., 19 F. Supp. 2d 414, 417-18 (E.D. Pa. 1998).</u> Where, as here, the plaintiff does not present such direct evidence of discrimination, he may survive summary judgment on a McDonnell Douglas pretext theory.

*HN9*The plaintiff must first establish a prima facie case by showing that he was a member of a protected class; he was qualified for the job he held; he was discharged; and, he was replaced by a person not in the protected class, or otherwise present evidence sufficient to support an inference of unlawful discrimination. See <u>Pivirotto v. Innovative Systems, Inc., 191 F.3d 344, 353-54 (3d Cir. 1999); Showalter v. Univ. of Pittsburgh Medical Ctr., 190 F.3d 231, 234 (3d Cir. 1999); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).</u> **[*21]** The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action. See <u>St. Mary's Honor Ctr., 509 U.S. at 506-07; Goosby v. Johnson & Johnson Medical Inc., 228 F.3d 313, 319 (3d Cir. 2000).</u>

HN10⤒The plaintiff may still prevail by demonstrating that the employer's proffered reasons were not its true reasons but rather a pretext for unlawful discrimination. See Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 143, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000); Goosby, 228 F.3d at 319. The plaintiff must present evidence from which a factfinder could reasonably disbelieve the employer's proffered reasons from which it may then be inferred that the real reason was discriminatory, or otherwise present evidence from which one could reasonably find that unlawful discrimination was more likely than not a determinative cause of the employer's action. See Hicks, 509 U.S. at 511 & n.4; Keller, 130 F.3d at 1108. HN11⤒To discredit a legitimate reason proffered by the employer, a plaintiff must present evidence demonstrating "such weaknesses, [*22] implausibilities, inconsistencies, incoherencies, or contradictions" in that reason that one could reasonably conclude it is incredible and unworthy of credence, and ultimately infer that the employer did not act for the asserted non-discriminatory reasons. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

The ultimate burden of proving that a defendant engaged in intentional discrimination remains at all times on the plaintiff. See Hicks, 509 U.S. at 507, 511.

Mr. Burch is a member of a protected class. The court assumes in addressing the instant motion that he had the basic objective qualifications for the job he held. n8 He was discharged from his employment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n8 See Goosby, 228 F.3d at 320-21 (noting distinction between objective qualifications and performance which generally is more appropriately considered at pretext stage).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

HN12⤒The decision to terminate plaintiff was made by someone who had promoted him to the position and by someone who is a member [*23] of the same protected class who then selected someone else in that class to replace plaintiff. While this does not per se foreclose a claim of discrimination, it certainly does not help to sustain plaintiff's claim. See Pivirotto, 191 F.3d at 354; Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 1002 (5th Cir. 1996) (that decisionmaker is of same race as plaintiff "considerably undermine[s] the probability that race was a factor"); Dungee v. Northeast Foods, Inc., 940 F. Supp. 682 n.3 (D.N.J. 1996) (that decisionmaker is member of plaintiff's protected class "weakens any possible inference of discrimination").

Plaintiff relies on his success as local sales manager in contrast to Ms. Dziabis and the selection of Ms. Kessler to raise an inference of race discrimination.

Mr. Burch as local sales manager and Ms. Dziabis as general sales manager, however, had different responsibilities and were not similarly situated. Moreover, Ms. Dziabis performed more to expectation prior to her promotion than did plaintiff prior to his termination. Also, these respective employment decisions were made by different decisionmakers. See Radue v. Kimberly Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000) [*24] HN13⤒("Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination"); Hollins v. Atlantic Co., 188 F.3d 652, 659 (6th Cir. 1999) (plaintiff must produce evidence that other relevant employees were similarly situated in all respects to show disparate treatment); Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988) (same).

That Ms. Tolson-Perry had a higher net score on two of 22 categories on a talent profile than Ms. Kessler does not suggest that her selection was racially motivated. The profile is not an empirical measurement but rather a predictive tool and only one criteria used in the selection process along with personal interviews and actual experience. Moreover, Mr. Jennings did not participate in the decision to choose Ms. Kessler and Ms. Dziabis, who had promoted plaintiff, was only one of three persons who did.

Plaintiff was replaced by a person in his protected class and has not presented competent evidence to support an inference that he was terminated because of his race. He has thus failed to satisfy the fourth [*25] element of a prima facie case.

Plaintiff has also failed to present competent evidence from which one could reasonably find that the stated reasons for his termination are incredible and unworthy of credence. That plaintiff may believe he was unfairly blamed for the failure to meet sales quotas does not establish pretext. It is the employer's perception that is important. See Fuentes, 32 F.3d at 765 ("To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent"); Hicks v. Arthur, 878 F. Supp. 737, 739 (E.D. Pa.) (that a decision is ill-formed or ill-considered does not make it pretextual), aff'd, 72 F.3d 122 (3d Cir. 1995). See also Schaffner v. Glencoe Park District, 256 F.3d 616, 621-22 (7th Cir. 2001) (opinions of coworkers or customers are not relevant to rebut defendant's assessment as plaintiff

must show defendant did not believe its own assessment); Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) **[*26]** ("what matters is the perception of the decision maker"); Doyle v. Sentry Ins., 877 F. Supp. 1002, 1009 n.5 (E.D. Va. 1995) (it is the perception of the decisionmaker that is relevant).

One cannot reasonably find from the competent evidence of record that Ms. Dziabis and Mr. Jennings had not earnestly, even if wrongly, concluded that plaintiff's management performance was deficient and that he bore responsibility for the continuing failure to meet sales quotas. While plaintiff suggests that Mr. Jennings may have been jealous of him, even plaintiff claims no more than that race "could be involved" in his termination. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n9 Even this speculation is limited to Mr. Jennings. Plaintiff has not sued Ms. Dziabis and clearly stated at his deposition that he does not claim she discriminated.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## A. FMLA Claims

*HN14* The FMLA entitles an eligible employee to take twelve work weeks of unpaid leave during any twelve-month period to care for a spouse who has a serious health condition. See 29 U.S.C. § 2612 **[*27]** (a)(1)(C). A serious health condition includes an illness, injury, impairment, or condition which involves inpatient care in a hospital. See 29 U.S.C. § 2611(11)(A). *HN15* The Act makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA, 29 U.S.C. § 2615(a), or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the Act, 29 U.S.C. § 2615(b), and permits an affected employee to bring a civil action against an employer who violates Section 2615. See 29 U.S.C. § 2617(a)(1). n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 *HN16* When taking leave, the "employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave." 29 C.F.R. § 825.302(c) (1995). Notice is sufficient if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed. See Stoops v. One Call Communications, Inc., 141 F.3d 309 (7th Cir. 1998); Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*28]**

*HN17* To sustain on a claim of wrongful denial or interference with the right to take requested leave, a plaintiff must prove that he was an eligible employee; that the defendant was an employer within the meaning of the Act; that he was entitled to leave under the Act; and, that the employer interfered with plaintiff's right to take leave or otherwise wrongfully denied the requested leave. See Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206-07 (11th Cir. 1999); Jeremy v. Northwest Ohio Development Center, 33 F. Supp. 2d 635, 638 (N.D. Ohio 1999), aff'd, 210 F.3d 372 (6th Cir. 2000). An employer may interfere with the exercise of an employee's rights by discouraging an employee from using leave. See 29 C.F.R. § 825.220(b).

The court assumes that Mr. Burch is an eligible employee and that WDAS is an employer under the Act. n11 It appears that Mr. Burch was entitled to leave at the time of his wife's surgery.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n11 *HN18* An employer is anyone engaged in commerce "who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). "Employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Courts have found that employee supervisors may thus be sued under the FMLA. See Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002); Meara v. Bennett, 27 F. Supp. 2d 288, 291 (D. Mass. 1998). See also Cantley v. Simmons, 179 F. Supp. 2d 654, 656 (S.D. W.Va. 2002); Carter v. U.S. Postal Service, 157 F. Supp. 2d 726, 728 (W.D. Ky. 2001); Morrow v. Putnam, 142 F.



Supp. 2d 1271, 1272 (D. Nev. 2001); Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403, 412 (M.D. Pa. 1999). The annual employment analysis submitted to the Federal Communications Commission shows that WDAS employed 38 full-time and 16 part-time employees as of May 31, 2000 and 40 full-time and 15 part-time employees as of February 26, 2001. Whether 50 employees were employed for each working day for each of 20 or more calendar workweeks is not clear. **HN19** An employee who has been employed for at least 12 months by the employer from whom leave is requested is an eligible employee, however, excluded is "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." 29 U.S.C. § 2611(2)(A). As no party addresses the issue, the court will assume that WDAS qualified as an employer and plaintiff as an employee.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*29]**

Plaintiff was never denied leave. Rather, he contends that Mr. Jennings interfered with his FMLA rights by not responding promptly to plaintiff's e-mail in which he indicated that he would be taking some time off to be with his wife and by reminding plaintiff of overdue reports during the period when Mrs. Burch was ill.

There is no competent evidence that Mr. Jennings was aware before plaintiff's e-mail, just prior to Mrs. Burch's surgery, that plaintiff wanted to take leave. There was nothing in the wording of the e-mail as plaintiff describes it that called for a formal response and plaintiff's own recollection is consistent with testimony of Mr. Jennings that he verbally told plaintiff to take time off to be with his wife. That Mr. Jennings may have periodically reminded plaintiff about overdue reports and other matters required of him in the ordinary course of his job is not prohibited conduct. An employer is required to grant requested leave for a prescribed purpose, but is not required to excuse performance by an employee on days he is on the job. One cannot reasonably conclude from the competent evidence of record that Mr. Jennings discouraged plaintiff from taking leave at **[*30]** the time of his wife's surgery.

The cases on which plaintiff relies are plainly distinguishable. In Williams v. Shenango, Inc., 986 F. Supp. 309 (W.D. Pa. 1997), the Court denied summary judgment on plaintiff's FMLA claim where the undisputed evidence showed that upon being notified of plaintiff's need for leave, the employer denied the request and asked plaintiff to request a different week. Id. at 320-21. In Shtab v. Greate Bay Hotel & Casino, 173 F. Supp. 2d 255 (D.N.J. 2001), the employer's benefit specialist in charge of family leave asked plaintiff to delay taking the leave he had requested. Id. at 259.

**HN20** To establish a prima facie claim of retaliation under the FMLA, a plaintiff must show that he engaged in a statutorily protected activity; that he suffered an adverse employment action; and, a causal connection between the adverse employment action and the exercise of his rights under the Act. See Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000); Alifano v. Merck & Co., 175 F. Supp. 2d 792, 795 (E.D. Pa. 2001); Agee v. Northwest Airlines, Inc., 151 F. Supp. 2d 890, 896 (E.D. Mich. 2001); **[*31]** see Soletro v. National Federation of Independent Business, 130 F. Supp. 2d 906, 913 (N.D. Ohio 2001; Jeremy v. Northwest Development Center, 33 F. Supp. 2d 635, 639 (N.D. Ohio 1999); Baltuskonis v. US Airways, Inc., 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999); Routes v. Henderson, 58 F. Supp. 2d 959, 979 (S.D. Ind. 1999).

In the absence of direct evidence of the employer's intent, courts have applied the McDonnell Douglas burden shifting framework. See Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001); Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757, 768 (5th Cir. 2001); Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 315 (6th Cir. 2001); Brungart v. Bellsouth Telecommunications, Inc., 231 F.3d 791, 798 (11th Cir. 2000); King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999); Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998); Alifano, 175 F. Supp. 2d 792 at 795; Baltuskonis, 60 F. Supp. 2d at 448.

Taking qualified leave **[*32]** under the FMLA is a protected activity and plaintiff's termination was an adverse employment action. To establish a causal connection between the two actions, plaintiff relies on the close temporal proximity between his leave and his termination. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n12 Plaintiff also suggests that the case of Lisa Boston demonstrates that Larry Jennings had a history of terminating employees for taking FMLA qualified leave. There is no competent evidence of record, however, that Mr. Jennings had anything to do with Ms. Boston's separation from WDAS. To the contrary, what evidence there is shows that he allowed her to remain on paid leave well beyond the prescribed period until Mr. Schofield objected.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN21** At least when it is particularly suggestive, the temporal proximity of plaintiff's protected conduct and his termination can raise an inference that there is a causal link between the two. See, e.g., Harris v. SmithKline

3/1/06 1:45 PM

Beecham, 27 F. Supp. 2d 569, 580 (E.D. Pa. 1998), aff'd, 203 F.3d 816 (3d Cir. 1999); [*33] Keeshan v. Home Depot U.S.A. Inc., 2001 U.S. Dist. LEXIS 3607, 2001 WL 310610, *12 (E.D. Pa. March 27, 2001); Voorhees v. Time Warner Cable Nat'l Div., 1999 U.S. Dist. LEXIS 13227, 1999 WL 673062, *6 (E.D. Pa. Aug. 30, 1999). In the instant case, however, the evidence that the decision to terminate plaintiff was made before he requested or took leave is uncontroverted. One cannot reasonably conclude that plaintiff was terminated for something which occurred after the decision to terminate him was made. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n13 As noted, plaintiff also has not discredited the reasons proffered by defendants for his termination which involve perceived deficiencies long pre-dating his request for leave.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

## C. State Law Claims

### 1. Breach of Contract/Wrongful Discharge

HN22 In Pennsylvania, at-will employees may be terminated at any time and for any reason or no reason. See Stumpp v. Stroudsburg Municipal Authority, 540 Pa. 391, 658 A.2d 333, 335 (Pa. 1995). See also Murray v. Commercial Union Ins. Co., 782 F.2d 432, 435 (3d Cir. 1986); [*34] Geary v. U.S. Steel Corp., 456 Pa. 171, 319 A.2d 174, 176 (Pa. 1974). Plaintiff concedes in his brief that he was an at-will employee and, in any event, has not presented evidence to rebut the strong presumption of at-will employment. See McLaughlin v. Gastrointestinal Specialists, Inc., 561 Pa. 307, 750 A.2d 283, 287 (Pa. 2000). See also Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 660 (3d Cir. 1990) (at-will presumption cannot be easily overcome). HN23 "Great clarity" is necessary to overcome the at-will presumption. Scott v. Extracorporeal Inc., 376 Pa. Super. 90, 545 A.2d 334, 338 (Pa. Super. 1988). A plaintiff bears the burden to produce clear and convincing evidence that the parties intended an employment relationship of a definite length. Greene v. Oliver Realty, Inc., 363 Pa. Super. 534, 526 A.2d 1192, 1200 (Pa. Super.), appeal den., 536 A.2d 1331 (Pa. 1987); see also Shaffer v. BNP/Cooper Neff, Inc., 1998 U.S. Dist. LEXIS 14013, 1998 WL 575135, *4 (E.D. Pa. Sept. 4, 1998).

HN24 That plaintiff was promised a specified annual salary does not overcome the at-will presumption. See Carlson v. Arnot-Ogden Memorial Hospital, 918 F.2d 411, 415 (E.D. Pa. 1990); [*35] Beidler v. W.R. Grace, Inc., 461 F. Supp. 1013, 1015 (E.D. Pa. 1978)(compensation for stated amount for stated period does not make contract one for definite period), aff'd, 609 F.2d 500 (3d Cir. 1979).

HN25 An at-will employee may nevertheless pursue relief for wrongful discharge where the termination violates clear public policy. See Novosel v. Nationwide Ins. Co., 721 F.2d 894, 898 (3d Cir. 1983). The public policy exception, however, has been "interpreted narrowly." Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1343, 1343-44 (3d Cir. 1990).

A discharge violates public policy only when it thwarts the administration of a Commonwealth agency or statutory mechanism, or undermines a statutory obligation of the employer or employee. See McLaughlin, 750 A.2d at 288. It is applicable where an employee has been required to commit a crime, prevented from complying with a statutory duty or discharged in violation of a specific statutory prohibition. See Spierling v. First American, 1999 PA Super 222, 737 A.2d 1250, 1252, 1254 (Pa. Super. 1999).

In any event, the public policy exception applies [*36] "only where there is no available statutory means of vindicating the policy in question." Kinnally v. Bell of Pa., 748 F. Supp. 1136, 1146 (E.D. Pa. 1990). See also Bruffett v. Warner Comm., Inc., 692 F.2d 910, 919 (3d Cir. 1982) (public policy exception applies only where no statutory remedy is available). Statutory remedies are clearly available to vindicate the type of misconduct plaintiff has alleged and indeed he has pursued some of them in this action. n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n14 Plaintiff's reliance on cases in which courts found a violation of public policy based on statutes which provided no private right of action is clearly misplaced.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

## 2. Defamation

*HN26* To sustain a claim for defamation, a plaintiff must show the defamatory character of the communication; publication by the defendant; application to the plaintiff; the understanding of the recipient of its defamatory meaning; the understanding of the recipient that it was intended to apply to the plaintiff; special harm to the plaintiff [*37] from its publication; and, abuse of any conditionally privileged occasion. See Pa. C.S.A. § 8343(a). To recover damages, a plaintiff must also prove that the statement results from some fault on the part of the defendant. See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 923 (3d Cir.), cert. denied, 498 U.S. 816 (1990).

*HN27* A communication is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 187 (3d Cir. 1999) (quotations omitted). An allegedly defamatory statement must also be viewed in context to assess the effect it is fairly calculated to produce and the impression it would ordinarily create with those among whom it is intended to circulate. See Weinstein v. Bullick, 827 F. Supp. 1193, 1197 (E.D. Pa. 1993). A communication is not defamatory because it may embarrass or annoy the person to whom it refers. See Maier v. Maretti, 448 Pa. Super. 276, 671 A.2d 701, 704 (Pa. Super. 1995). n15

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 *HN28* Statements critical of an employee's job performance are generally not capable of defamatory meaning. See Sheehan v. Anderson, 2000 U.S. Dist. LEXIS 3048, 2000 WL 288116, *2 (E.D. Pa. Mar. 17, 2000); Wendler v. DePaul, 346 Pa. Super. 479, 499 A.2d 1101, 1103 (Pa. Super. 1985).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*38]

*HN29* A communication may also be privileged when made by one of several persons having a common interest in a particular subject matter to others sharing that interest which he reasonably believes they are entitled to know. See Jones v. Johnson & Johnson, McNeil-PPC, Inc., 1997 U.S. Dist. LEXIS 13050, 1997 WL 549995, *8 (E.D. Pa. Aug. 22, 1997), aff'd, 166 F.3d 1205 (3d Cir. 1998).

The court, however, need not determine whether the statements about plaintiff being fired or his deficient performance attributed to Mr. Jennings were capable of defamatory meaning or privileged. This is because plaintiff has presented no competent evidence that these statements were made. His claim rests entirely on his hearsay testimony that fellow employees and an employee at WPHI told him that they had heard or heard from others of such statements by Mr. Jennings. The person at WPHI to whom Mr. Jennings purportedly made a negative statement about plaintiff testified that this never occurred and no sworn statement of any kind from the other purported witnesses was presented. Indeed, the only competent evidence of the publication of plaintiff's firing and the reasons given therefor is plaintiff's admission [*39] that he himself contemporaneously communicated this information to a number of people at WDAS.

## V. Conclusion

As plaintiff never filed a complaint with the EEOC or PHRC, he cannot maintain his Title VII claim. As defendants never received federal funding, plaintiff cannot sustain his Title VI claim.

Plaintiff has not sustained a prima facie case of racial discrimination in violation of § 1981, or presented competent evidence from which one could reasonably find that the stated reasons for his termination were incredible and unworthy of belief. One cannot reasonably find from the competent evidence of record that plaintiff was denied or discouraged from taking leave under the FMLA. Plaintiff cannot sustain his FMLA retaliatory discharge claim in the face of uncontroverted evidence that the decision to terminate him was made and communicated to the employer's business manager for action before plaintiff requested or took leave.

Plaintiff was an at-will employee. He has presented no clearly established public policy violation in connection with his termination for which statutory remedies do not exist. Plaintiff has failed to sustain his claims for breach of contract or [*40] wrongful discharge. Plaintiff has presented no competent evidence that the statements he claims are defamatory were published by anyone other than himself. n16

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 Insofar as Mrs. Burch has attempted to assert a claim for loss of consortium, such a claim is derivative and

could not survive the failure of Mr. Burch to sustain his claims. See Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001); Wakshul v. City of Philadelphia, 998 F. Supp. 585, 590 (E.D. Pa. 1998).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Defendants are entitled to summary judgment. Their motion will be granted. An appropriate order will be entered.

**ORDER**

**AND NOW,** this 28th day of June, 2002, upon consideration of the defendant's Motion for Summary Judgment (doc. #15) and the response thereto, consistent with the court's memorandum herein, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** and accordingly **JUDGMENT** is **ENTERED** in the above action for defendants.

**BY THE COURT:**

**JAY [\*41] C. WALDMAN, J.**

---

View: Full | Custom                    ◁◁◁◁◁ 1 of 1 ▷▷▷▷▷                    Print | Download | Fax | Email | Text Only

More Like This | More Like Selected Text | *Shepardize*® | TOA

⚠ Burch v. WDAS AM/FM, 146 Lab. Cas. (CCH) P34,552                                    Pages:    24

Service:  Get by LEXSEE®
Citation:  2002 U.S. Dist. LEXIS 12290
View:  Full
Date/Time:  Wednesday, March 1, 2006 - 1:45 PM EST

* Signal Legend:
⊗ - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

*My Lexis*™ | Search | Research Tasks | Search Advisor | Get a Document | *Shepard's*® | Alerts
History | Delivery Manager | Switch Client | Preferences | Feedback | Sign Off | Help

 LexisNexis®   About LexisNexis    Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



Service:  Get by LEXSEE®
Citation:  2004 U.S. App. LEXIS 21467

*113 Fed. Appx. 442, \*; 2004 U.S. App. LEXIS 21467, \*\**

DONNA HAZEN, Appellant v. MODERN FOOD SERVICES, INC., t/a Smuggler's Cove, RONALD SARAJIAN, Individually and as President of Modern Food Services, Inc., t/a Smuggler's Cove, and MISTY GERRITY, Individually and as a supervisor of Modern Food Services, Inc., t/a Smuggler's Cove

No: 03-4014

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

113 Fed. Appx. 442; 2004 U.S. App. LEXIS 21467

September 23, 2004, Submitted Pursuant to Third Circuit LAR 34.1(a)
October 15, 2004, Filed

**NOTICE: [\*\*1]** RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Middle District of Pennsylvania. (D.C. Civil No. 02-cv-00090). District Judge: Hon. James M. Munley.

**DISPOSITION:** Affirmed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee challenged a judgment from the United States District Court for the Middle District of Pennsylvania, which granted summary judgment in favor of defendants, her employer, its president, and a supervisor, on the employee's Title VII retaliation claim.

**OVERVIEW:** The district court concluded that the employee's conversation with a co-worker regarding the president's alleged statement about the circumstances of the employee's transfer from the employer's bar to its dining area could be construed as a complaint under Title VII. However, the district court found that the transfer from did not constitute a demotion. On appeal, the court agreed that the informal statement to the co-worker rather than management constituted protected activity necessary to establish a prima facie case of retaliation. The court held that the transfer was not a demotion because the rate of pay and the job responsibilities for both areas were the same. Summary judgment was not barred by the law of the case doctrine because the motion for summary judgment filed by the employer, supervisor, and president raised very different issues and required distinct inquiries than their motion for judgment on the pleadings. The court reasoned that, although the employee stated a cause of action on its face, which was required to withstand the motion for judgment on the pleadings, she failed to establish a prima facie case, which was required to withstand summary judgment.

**OUTCOME:** The court affirmed the judgment of the district court.

**CORE TERMS:** summary judgment, prima facie case, retaliation, protected activity, genuine issue of material fact, legitimate reason, cause of action, adverse action, matter of law, retaliatory, proffered, animus

**LexisNexis(R) Headnotes** ◆ <u>Hide Headnotes</u>

<u>Civil Procedure</u> > <u>Summary Judgment</u> > <u>Standards of Review</u> 🔍

<u>Civil Procedure</u> > <u>Appeals</u> > <u>Standards of Review</u> > <u>De Novo Review</u> 🔍

*HN1* A federal court of appeals' review of a district court's grant of summary judgment is plenary. Accordingly, the appellate court is required to apply the same test that the district court should have utilized. <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disparate Treatment</u> > <u>Burden Shifting Analysis</u> 🔍

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Retaliation</u> 🔍

*HN2* To establish a prima facie case of retaliation, an employee must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and her employer's adverse action. <u>More Like This Headnote</u> |
*Shepardize: Restrict By Headnote*

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disparate Treatment</u> > <u>Burden Shifting Analysis</u> 🔍

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Retaliation</u> 🔍

*HN3* Once an employee establishes a prima facie case of retaliation, the employer must present a legitimate, non-retaliatory reason for its adverse employment action. This burden is "relatively light," and is satisfied if the employer articulates any legitimate reason for the adverse employment action. The employer need not prove that the articulated reason actually motivated the adverse employment action. <u>More Like This Headnote</u>

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Disparate Treatment</u> > <u>Burden Shifting Analysis</u> 🔍

<u>Labor & Employment Law</u> > <u>Discrimination</u> > <u>Retaliation</u> 

*HN4* In the context of a retaliation claim, if an employer tenders a legitimate reason for the employment action the employee must then convince the factfinder both that the employer's proffered explanation is false, and that the employer's action was actually motivated by a retaliatory animus. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 🔍ALL

Labor & Employment Law > Discrimination > Retaliation 🔍ALL

Civil Procedure > Summary Judgment > Summary Judgment Standard 🔍ALL

*HN5* In the context of a retaliation claim, in order to prevail on summary judgment, an employer must show that the trier of fact could not conclude, as a matter of law, that retaliatory animus had a determinative effect on the outcome. This may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to any element of the plaintiff's prima facie case, or the credibility of any proffered explanation for the employment action. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 🔍ALL

Labor & Employment Law > Discrimination > Retaliation 🔍ALL

*HN6* Informal complaints of discrimination that are directed at co-workers rather than management constitute protected activity for purposes of establishing a prima facie case of retaliation. More Like This Headnote | *Shepardize: Restrict By Headnote*

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1964 🔍ALL

Labor & Employment Law > Discrimination > Title VII 🔍ALL

Labor & Employment Law > Discrimination > Retaliation 🔍ALL

*HN7* Title VII protects employees from retaliation for an employee's opposition to any unlawful employment practice. More Like This Headnote

Civil Procedure > Preclusion & Effect of Judgments > Law of the Case Doctrine 🔍ALL

*HN8* Under the law of the case doctrine, once an issue has been decided, parties may not relitigate that issue in the same case. More Like This Headnote

Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings 🔍ALL

*HN9* In deciding a motion for judgment on the pleadings, a district court determines from the pleadings if it appears to a certainty that no relief could be granted under any set of facts which could be proved. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard 🔍ALL

*HN10* When deciding a motion for summary judgment, a district court reviews all discovery and determines whether a genuine issue of material fact exists. More Like This Headnote

Get a Document - by Citation - 113 Fed. Appx. 442

3/1/06 1:51 PM

Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings 

Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN11** The standard used to decide a summary judgment motion and a motion for judgment on the pleadings, which are two very different motions, is obviously not the same. In deciding a motion to dismiss on the pleadings, the court presumes that the plaintiff will be able to prove the allegations set forth in the pleadings, and then determines if those allegations establish a cause of action. Summary judgment involves no such presumption. More Like This Headnote

**COUNSEL:** For DONNA HAZEN, Appellant: Cynthia L. Pollick, The Employment Law Firm, Pittston, PA.

For MODERN FOOD SERVICES, INC., t/a Smuggler's Cove, RONALD SARAJIAN, Individually and as President of Modern Food Services, Inc., t/a Smuggler's Cove, and MISTY GERRITY, Individually and as a supervisor of Modern Food Services, Inc., t/a Smuggler's Cove, Appellees: Hugh M. Emory, Ryan, Emory & Ryan, Paoli, PA.

**JUDGES:** Before: McKEE, Circuit Judges, ALDISERT and GREENBERG, Senior Circuit Judges.

**OPINIONBY:** McKEE

**OPINION:**

[*443] McKEE, Circuit Judge

Donna Hazen appeals the district court's grant of summary judgment in favor of defendants, denying relief on her claim of retaliation for complaints regarding sexual discrimination. We will affirm.

I.

Inasmuch as we are writing only for the parties, we need not repeat the factual or procedural background of this litigation [**2] except insofar as may be helpful to our brief discussion. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 **HN1** Our review of the district court's grant of summary judgment is plenary. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000). Accordingly, we are required to apply the same test that the district court should have utilized. Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN2** To establish a prima facie case of retaliation, Hazen must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the protected activity and her employer's adverse action. Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 284 (3d Cir. 2001); Krouse v. American Sterilizer Co., 126 F.3d 494, 499 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997).

**HN3** Once an employee establishes a prima facie case of [**3] retaliation, the employer must present a legitimate, non-retaliatory reason for its adverse employment action. Woodson, 109 F.3d at 920 n.2. This burden is "relatively light," and is satisfied if the employer articulates any legitimate reason for the adverse employment action. The employer need not prove that the articulated reason actually motivated the adverse employment action. Id.

**HN4** If the employer tenders a legitimate reason for the employment action the employee must then convince the factfinder both that the employer's proffered explanation is false, and that the employer's action was actually motivated by a retaliatory animus. Woodson, 109 F.3d at 920 n.2.

*HN5* In order to prevail on summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, that retaliatory animus had a determinative effect on the outcome. This may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to any element of the plaintiff's prima facie case, or the credibility of any proffered explanation for the employment action. Krouse, 126 F.3d at 501.

**II.**

We **[\*\*4]** agree with the district court's conclusion that Hazen's conversation with Torley regarding Sarajian's alleged statement **[\*444]** about the circumstances of Hazen's transfer could be construed as a complaint under Title VII. We have previously held that *HN6* informal complaints of discrimination that were directed at co-workers rather than management constitute protected activity for purposes of establishing a prima facie case of retaliation. Neiderlander v. American Video Glass Co, 80 Fed. Appx. 256, 259 (3d Cir. 2003). *HN7* Title VII protects employees from retaliation for the employee's opposition to any unlawful employment practice. Id.

Here, however, the district court concluded that Hazen failed to satisfy the second requirement of her prima facie case because the record did not establish that her transfer from the bar to the dining area constituted a demotion. We agree. It is undisputed that the rate of pay for both areas was $ 2.83 per hour plus tips, and the job responsibilities were the same. Accordingly, Hazen's claim of retaliation fails as a matter of law.

**III.**

Hazen's claim that summary judgment is foreclosed by the law of the case doctrine is frivolous. *HN8* Under **[\*\*5]** that doctrine, "once an issue has been decided, parties may not relitigate that issue in the same case." Ogbudimkpa v. Ashcroft, 342 F.3d 207 n.7 (3d Cir. 2003)(citing Waldorf v. Shuta, 142 F.3d 601, 616 n.4 (3d Cir. 1998). The defendants' motion for judgment on the pleadings and their motion for summary judgment obviously raised very different issues and required distinct inquiries. *HN9* In deciding the motion for judgment on the pleadings, the district court determines from the pleadings "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). However, *HN10* when deciding a motion for summary judgment, the district court reviews all discovery and determines whether a genuine issue of material fact exists. Farrell v. Planters Lifesavers Co., 205 F.3d 271, at 278. *HN11* The standard used to decide these two very different motions is obviously not the same. In deciding a motion to dismiss on the pleadings, the court presumes that the plaintiff will be able to prove the allegations set forth in the pleadings, and then determines if those allegations **[\*\*6]** establish a cause of action. Summary judgment involves no such presumption.

Hazen failed to establish a prima facie case even though her pleading does state a cause of action on its face. Therefore, the law of the case doctrine simply did not apply to the district court's summary judgment analysis.

**IV.**

Based on the foregoing analysis, we will affirm the decision of the district court.

View: Full | Custom          ◄◄ 1 of 1 ►►          Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | Shepardize® | TOA

Hazen v. Modern Food Servs., 113 Fed. Appx. 442          Pages:    6

Service: Get by LEXSEE®
Citation: 2004 U.S. App. LEXIS 21467
View: Full
Date/Time: Wednesday, March 1, 2006 - 1:50 PM EST

http://www.lexis.com/research/retrieve?_m=e9b98801fd6f9d17ff130a08d6748113&csvc=le&cform=byCitation&_fintstr=FULL&docnum=1&_startdoc=1&wchp=dGLbVtz-zSkAA&_md5 ...          Page 5 of 6

* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
I - Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.



*My Lexis*™ | Search | Research Tasks | Search Advisor | Get a Document | *Shepard's*® | Alerts
History | Delivery Manager | Switch Client | Preferences | Feedback | Sign Off | Help

About LexisNexis    Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



FOCUS™ Terms [                                    ] Go → FOCUS Options...

View: Full | Custom          ◁◁◁◁ 1 of 1 ▷▷▷▷          Print | Download | Fax | Email | Text Only
             More Like This | More Like Selected Text | Shepardize® | TOA
             Ⓐ Zelinski v. Pa. State Police, 108 Fed. Appx. 700          Pages: 12

Service: Get by LEXSEE®
Citation: 2004 U.S. App. LEXIS 16576

*108 Fed. Appx. 700, *; 2004 U.S. App. LEXIS 16576, ***

LAURA ZELINSKI, Appellant. v. PENNSYLVANIA STATE POLICE; COMMONWEALTH OF PENNSYLVANIA, THE; LOU ALTIERI, RICHARD WEINSTOCK

No. 03-4025

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

108 Fed. Appx. 700; 2004 U.S. App. LEXIS 16576

May 24, 2004, Argued
August 11, 2004, Opinion Filed

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Middle District of Pennsylvania. (D.C. Civ. No. 01-cv-01979). Chief. District Judge: Honorable Thomas J. Vanaski.

Zelinski v. Pa. State Police, 2004 U.S. App. LEXIS 21235 (3d Cir. Pa., Aug. 11, 2004)

**DISPOSITION:** Affirmed in part, vacated in part and remanded.

CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant, state trooper, challenged a judgment of the United States District Court for the Middle District of Pennsylvania which granted summary judgment in favor of appellees, the state police, the commonwealth, a co-worker, and a supervisor, on the trooper's claims for, inter alia, sexual discrimination and retaliation brought pursuant to 42 U.S.C.S. § 1983 and the First Amendment.

**OVERVIEW:** Almost immediately after the trooper became a member of the state police's specialized drug investigation unit, her co-worker began sexually harassing her. After several months, the trooper told her supervisor that she did not feel comfortable working with the co-worker. Later the trooper was transferred to another unit where she lost neither rank nor pay as a result. After the transfer, the trooper filed a written sexual harassment complaint with the state police and state human relations agency. The district court concluded that the trooper presented no evidence to suggest that her co-worker was the trooper's superior when he engaged in the alleged acts of sexual harassment. The district court's grant of summary judgment in favor of the co-worker on the 42 U.S.C.S. § 1983 claim was proper. The district court held that there was no genuine issue of material fact as to hostile work environment because the harassment the trooper suffered was not severe or pervasive enough. Neither the form, context, nor content of the trooper's speech supported a finding that it addressed a matter of public concern, and her First Amendment claim was properly dismissed.

**OUTCOME:** The district court's judgment was vacated in part and remanded in part.

**CORE TERMS:** summary judgment, sexual harassment, retaliation, trooper, protected activity, harassment, suggestive, causation, hostile work environment, unusually, reasonable jury, genuine issue of material fact, conversation, supervisory, pervasive, severe, search warrant, period of time, subjected, vacate, matter of public concern, causal connection, elected official, nonmoving party, non-supervisory, discriminatory, inappropriate, co-worker, exposed, patrol

### LexisNexis(R) Headnotes ♦ Hide  Headnotes

Civil Procedure > Appeals > Standards of Review > De Novo Review 

*HN1* The appellate court has jurisdiction to hear an appeal pursuant to 28 U.S.C.S. § 1291. An appellate court exercises plenary review over a district court's grant of summary judgment.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard 

*HN2* Summary judgment should be granted if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" if its existence or nonexistence might affect the outcome of the suit under the applicable law. Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  More Like This Headnote  |  *Shepardize:* Restrict By Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage 

*HN3* In order to sustain a claim under 42 U.S.C.S. § 1983, a claimant must establish that a person, acting under the color of state law, has deprived her of a right secured by the United States Constitution. A finding of liability under 42 U.S.C.S. § 1983 requires that the defendants have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Generally, in order to act under the color of state law, the wrongdoer must be in a supervisory position in relation to the plaintiff.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage 

*HN4* See 42 U.S.C.S. § 1983.

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage 

*HN5* Courts look at the substance of an individual defendant's job functions, rather than the form, to determine whether an employee is acting in a supervisory capacity for purposes of employment discrimination claims under 42 U.S.C.S. § 1983. The two primary factors the court examined to determine whether there is de facto supervisory control are (1) whether the defendant can alter the plaintiff's workload, and (2) whether the plaintiff would face charges of insubordination for failure to obey the defendant's order. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

*HN6* A plaintiff can establish a violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq., by proving that discrimination based on sex has created a hostile or abusive work environment. However, not all work place conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII. When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

*HN7* A totality of the circumstances test determines whether the threshold level of severity and pervasiveness has been reached. The severity of the harassment, the frequency of the harassment, and the degree of abuse are factors courts should consider. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

*HN8* The initial burden of proving a prima facie case of discriminatory retaliation. A plaintiff must demonstrate that (1) she engaged in a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., protected employee activity, (2) the employer takes an adverse employment action against her, and (3) there is a causal link between the engaged protected activity and the adverse employment action. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

*HN9* Protected activities under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq., protected employee include situations where an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under. Title VII. 42 U.S.C.S. § 2000e-3(a). A formal letter of complaint to an employer or the Equal Employment Opportunity Commission is not the only way to meet the protected activity criterion. Protected activities include formal charges of discrimination, as well as informal protests of discriminatory employment practices, including making complaints to management. It is necessary to analyze the message conveyed, rather than "the medium of conveyance." More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation

HN10 Temporal proximity alone is insufficient to establish the required causal connection in retaliation cases when temporal proximity is not "unusually suggestive." When there may be a valid reason why the adverse employment action is not taken immediately, the absence of immediacy between the cause and effect does not disprove causation. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation 🔍ALL

HN11 A discharge occurring two days after a plaintiff has filed an Equal Employment Opportunity Commission complaint is "unusually suggestive." By itself, a nineteen-month span of time was considered too long a period to be "unusually suggestive." More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation 🔍ALL

HN12 A plaintiff can also establish the causation element for a retaliation claim by providing evidence of inconsistent reasons for the adverse employment action. More Like This Headnote

Constitutional Law > Fundamental Freedoms > Freedom of Speech > Public Employees' Speech 🔍ALL

HN13 The expressive rights of public employees are more restricted that those of public citizens who are not in an employment relationship with the government. A public employee's speech is protected only if it relates to a matter of public concern, i.e., if it is important to the process of self-governance that communications on this topic, in this form and in this context, take place. More Like This Headnote

**COUNSEL:** For LAURA ZELINSKI, Appellant: Spero T. Lappas, Serratelli, Schiffman, Brown & Calhoun, Harrisburg, PA.

For PA STATE POL, COMM OF PA, LOU ALTIERI, Appellees: Sarah C. Yerger, Office of the Attorney General of Pennsylvania, Harrisburg, PA.

For RICHARD WEINSTOCK, Appellee: James P. Golden, Jane B. LaPorte, Hamburg & Golden, Philadelphia, PA.

**JUDGES:** Before: ROTH, STAPLETON, Circuit Judges, SCHWARZER,* Senior District Judge.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**OPINIONBY:** ROTH

**OPINION:**

[*702] **ROTH**, Circuit Judge:

Trooper Laura Zelinski brought an action against the Pennsylvania State Police (PSP), the Commonwealth of Pennsylvania, Corporal Lewis Altieri, and Trooper Richard Weinstock (both employees of the PSP), pursuant [**2] to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 (West 2004), the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. § 955 (West 2004), and 42 U.S.C. §§ 1983, 1985, and 1988. Zelinski's claims arise out of alleged incidents of sexual harassment and discrimination. For the reasons that follow, we will affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL HISTORY

Zelinski became a member of the PSP specialized drug investigation unit, known as the Tactical Narcotics Team (TNT) unit, in May of 1999. According to Zelinski, Trooper Weinstock began sexually harassing her almost immediately. After several months, Zelinski told her supervisor, Corporal Altieri, that she did not feel comfortable working with Weinstock. She related to Altieri the incidents of sexual harassment and told Altieri that she did not want anything to be done about them. Zelinski maintains that Altieri subsequently subjected her to unfair criticism because Altieri favored Weinstock.

Beginning in the fall of 1999, there was significant tension within the TNT unit, much of it the result of individual **[* *3]** members' problems with Trooper Weinstock. Altieri, head of the unit, informed his immediate supervisor, Sergeant Michael Ruda, about the unit's problems. Once this information went through the appropriate chain of command, Captain John Duignan recommended that Zelinski and another TNT member be removed from the unit. In August 2000, Major Tyree Blocker transferred Zelinski from the TNT unit. Zelinski lost neither rank nor pay as a result of the transfer. After the transfer, Zelinski filed a written sexual harassment complaint with the PSP's Equal Opportunity Officer. On November 15, 2000, she filed a complaint with the Pennsylvania Human Relations Commission. After receiving a right to sue letter, Zelinski brought this action.

Zelinski filed an action in the District Court for the Middle District of Pennsylvania against the PSP, the Commonwealth of Pennsylvania, Corporal Lewis Altieri, and Trooper Richard Weinstock, bringing claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 (West 2004), the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. § 955 (West 2004), and 42 U.S.C. §§ 1983, **[**4]** 1985, and 1988. Weinstock filed a motion to dismiss, and all defendants filed motions for summary judgment. The District Court denied Weinstock's motion to dismiss but granted the defendants' motions for summary judgment on all claims. Zelinski appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

*HN1* We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment. *Assaf v. Fields*, 178 F.3d 170, 171 (3d. Cir. 1999). *HN2* Summary judgment should be granted if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or nonexistence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). "Summary judgment will not lie if the **[*703]** dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* **[**5]**

## III. DISCUSSION

### A. Summary Judgment in favor of Trooper Weinstock on the 42 U.S.C. § 1983 claim

Zelinski claims that the District Court erred in granting summary judgment in favor of Weinstock on her § 1983 claim. *HN3* In order to sustain a claim under 42 U.S.C. § 1983 n1, Zelinski must establish that a person, acting under the color of state law, deprived her of a right secured by the Constitution. *Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003). "A finding of liability under 42 U.S.C. § 1983 requires that the defendant . . . have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Bonenberger v. Plymouth Township*, 132 F.3d 20, 23 (3d Cir. 1997) (internal quotations and citations omitted). Generally, in order to act under the color of state law, the wrongdoer must be in a supervisory position in relation to the plaintiff. *See id.* at 23-24. The District Court concluded that Zelinski presented no evidence "to suggest that Weinstock was Zelinski's superior at any time **[**6]** that he engaged in the alleged acts of sexual harassment." *Zelinski v. Pa. State Police*, 282 F. Supp. 2d 251, 266 (M.D. Pa. 2003). We agree that summary judgment was proper.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 *HN4* Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2004).


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Zelinski offers no evidence that any of the incidents of sexual harassment occurred at any time when Weinstock was in a supervisory position in relation to Zelinski. Both Zelinski and Weinstock were troopers at all relevant times, neither person having authority over the other. The only time Weinstock was in a supervisory **[**7]** position in relation to Zelinski was at the end of July 2000 when Corporal Altieri was on vacation. No incidents of sexual harassment occurred during this period of time.

The fact that Weinstock was not Zelinski's formal supervisor at the time of the harassment, however, is not dispositive. See _Bonenberger, 132 F.3d at 23-24_. In _Bonenberger_, HN5⤓ we looked at the substance of the individual defendant's job functions, rather than the form, to determine whether an employee was acting in a supervisory capacity. _Id_. The two primary factors the Court examined to determine whether there was de facto supervisory control were 1) whether the defendant could alter the plaintiff's workload, and 2) whether the plaintiff would face charges of insubordination for failure to obey the defendant's order. _Id_. At all relevant times, Weinstock could not alter Zelinski's workload and Zelinski could not be charged with insubordination for failing to obey Weinstock's orders.

For the foregoing reasons, we will affirm the District Court's grant of Weinstock's motion for summary judgment on Zelinski's § 1983 claim.

## B. Summary Judgment for the PSP on the Title VII sexual [**8] discrimination claim

Zelinski also argues that the District Court erred in granting the PSP's motion for summary judgment on her Title **[*704]** VII claim. HN6⤓ A plaintiff can establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. _Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 66, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)_. However, "not all work place conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." _Id. at 67_. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." _Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998)_ (quoting _Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993))_.

The District Court held that there was no genuine issue of material fact as to hostile work environment because the harassment Zelinski suffered was not severe or pervasive [**9] enough. We disagree with the District Court and will remand the case on this claim because we do find that there is a genuine issue of material fact.

HN7⤓ A totality of the circumstances test determines whether the threshold level of severity and pervasiveness has been reached. _Harris, 510 U.S. at 23_. The severity of the harassment, the frequency of the harassment, and the degree of abuse are factors courts should consider. _Id_. Zelinski offers four alleged incidents of sexual harassment as proof that she was exposed to a hostile work environment. The first incident occurred while Weinstock and Zelinski were car pooling from a training session when Weinstock told Zelinski he was sexually attracted to her, placed his hand on her leg, and suggested that he come over to Zelinski's hotel room to give her a full body massage. The second incident occurred while Weinstock and Zelinski were riding in a surveillance van together when Weinstock described in graphic detail the manner in which he wanted to have sex with Zelinski. The third incident occurred when Weinstock told Zelinski, "If I can see down your sweater, everyone else can." The fourth incident occurred when Weinstock, **[**10]** repeatedly throughout the day, told Zelinski that he could see her underwear.

Aside from these four specific incidents of sexual harassment, other circumstances contributed to the creation of a hostile work environment. Zelinski alleges that Altieri did not believe what Zelinski told him about Weinstock, he criticized her for making the report, and he told Zelinski that Weinstock was a "nice guy." Zelinski also claims that Altieri subjected Zelinski to unjustified criticism concerning the execution of a search warrant and other alleged misconduct, and he placed a disciplinary notation in her file.

There is also a genuine issue of material fact as to whether Weinstock failed to provide Zelinski with protection and assistance during an undercover drug operation. If Weinstock failed to provide Zelinski with protection and if there was a connection between Zelinski's rejections of Weinstock's advances and the failure to provide protection, then a reasonable jury may conclude that the harassment was sufficiently severe and pervasive. By failing to provide Zelinski with adequate protection in the dangerous and sometimes deadly world of drug law enforcement, Weinstock may have created a **[**11]** hostile work environment. Viewing this incident in light of a comment Weinstock made to another trooper after Zelinski's report to Corporal Altieri, "Laura [Zelinski] tried to hurt me with Lou [Altieri] and now I'm going to hurt her," it becomes more apparent **[*705]** that Zelinski may have been exposed to a hostile work environment.

Get a Document - by Citation - 108 Fed. Appx. 700

All of the alleged incidents that contributed to the hostile work environment occurred over a period of time slightly over one year. The number of incidents in this relatively short length of time shows that the incidents of harassment are more than isolated and unrelated. Considering all of these alleged incidents together, Zelinski has presented enough evidence to establish that there is a genuine issue of material fact, sufficient to go to a fact finder, as to whether she was exposed to a severe and pervasive hostile work environment. Summary judgment in favor of the PSP was inappropriate because "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248*.

For the foregoing reasons, we will vacate the judgment on the Title VII discrimination claim and remand it for further proceedings. **[**12]**

## C. Summary Judgment for the PSP, Altieri, and Weinstock on the Title VII and First Amendment retaliation claims

Finally, Zelinski appeals the District Court's grant of summary judgment in favor of the PSP, Altieri, and Weinstock on her Title VII and First Amendment retaliation claims. Zelinski has *HN8* the initial burden of proving a prima facie case of discriminatory retaliation. Zelinski must demonstrate that (1) she engaged in a Title VII protected employee activity, (2) the employer took an adverse employment action against her, and (3) there is a causal link between the engaged protected activity and the adverse employment action. *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001). The District Court held that Zelinski's report of the sexual harassment incidents to Altieri was not a protected activity under Title VII and that, even if it was, there was no causal connection between the report and her transfer. We disagree with the District Court. We will vacate the judgment on this claim because there are genuine issues of material fact and remand it to the District Court.

*HN9* Protected activities under Title VII include situations where an employee **[**13]** "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). A formal letter of complaint to an employer or the EEOC is not the only way to meet the protected activity criterion. *Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir. 1995). Protected activities include formal charges of discrimination, "as well as informal protests of discriminatory employment practices, including making complaints to management . . .." *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). It is necessary to analyze the message conveyed, rather than "the medium of conveyance." *Barber*, 68 F.3d at 702.

Zelinski reported the alleged incidents of sexual harassment to her superior, Corporal Altieri, after being questioned about how she was getting along with the other members of the TNT unit. During the conversation, Zelinski related to Altieri the two incidents when Weinstock made sexual advances toward Zelinski. The fact that Zelinski told Altieri that she did not want anything to be done in response **[**14]** to Weinstock's conduct, does not bar her statements to Altieri from being a protected activity. A reasonable jury could conclude that this conversation fell within the ambit of a protected activity.

The District Court properly held that Zelinski's transfer to a patrol unit was an "adverse employment action" under Title VII. The fact that Zelinski lost neither pay nor rank as a result of the transfer is not **[*706]** dispositive. *See Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 115-116 (3d Cir. 1996) (summary judgment reversed where plaintiff claimed that patrol assignment was less desirable than detective bureau, even though plaintiff did not lose pay or rank as a result of transfer); *Torre v. Casio, Inc.*, 42 F.3d 825, 831 n.7 (3d Cir. 1994) ("[A] transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action.").

In addition to proving protected activity and adverse employment action, Zelinski must also show a causal relationship between the protected activity (her complaint to Altieri) and the adverse employment action (her transfer from the TNT unit). Zelinski's alleged complaint to Altieri **[**15]** regarding Weinstock's sexually harassing comments occurred during a conversation in October of 1999. Her transfer from the TNT unit occurred in August of 2000, ten months after her report to Altieri.

In *Farrell v. Planters Lifesavers Co.*, we acknowledged that "our case law is 'seemingly split' as to whether temporal proximity between the protected activity and the alleged retaliatory act can be sufficient in itself to create an inference of a causal connection for the purposes of a prima facie case of retaliation." 206 F.3d 271, 279 (3d Cir. 2000) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)). The facts and contexts of each case are important in determining whether there is a causal relationship. *HN10* Temporal proximity alone is insufficient to establish the required causal connection when temporal proximity is not "unusually suggestive." *Id.* at 280. "When there may be a valid reason why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997).

*HN11* A discharge **[**16]** occurring two days after a plaintiff filed an EEOC complaint is "unusually suggestive." *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). By itself, a nineteen-month span of time was considered too long a period to be "unusually suggestive." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The ten-month time period between Zelinski's complaint and her transfer is not as "unusually suggestive" as the two-day period in *Jalil*, but is more "suggestive" then the nineteen-month period of time in *Krouse*. Alone, the ten-

Get a Document - by Citation - 108 Fed. Appx. 700

month period of time may not meet the threshold test of "unusually suggestive."

By examining the other factors that can establish causation, however, we believe that a rational fact finder could decide that there was causation between the two events. There may have been a valid reason why no adverse action was taken right away. Corporal Altieri began to communicate Zelinski's sexual harassment claims to his superiors sometime before June 2000. It is possible that the individuals with authority to transfer Zelinski (or any other member of the TNT unit for that matter) were unaware of the problems and therefore **[\*\*17]** did not react before August 2000. The time period between Altieri telling his superiors about the sexual harassment and Zelinski's transfer was a period of only two months. This is much more "unusually suggestive" than a period of ten months.

Zelinski has also presented evidence of at least four incidents of intervening antagonism between the time she told Altieri of her problems with Weinstock and the time of her transfer. See _Robinson v. Southeastern Pa. Transp. Auth._, 982 F.2d 892, 895 (3d Cir. 1993) ("intervening pattern of antagonism" during the period between the protected activity and the adverse employment action can prove causation). Zelinski alleges that she was subjected to false criticism **[\*707]** for the execution of a search warrant in January 2000, in front of other troopers; she was unfairly criticized for misconduct in April 2000; and Altieri placed a disciplinary note in her file. Finally, Zelinski maintains that she had to undergo two separate sessions of unwarranted disciplinary counseling in July of 2000.

_HN12_ A plaintiff can also establish the causation element by providing evidence of inconsistent reasons for the adverse employment action. _Farrell_, 206 F.3d at 281. **[\*\*18]** Captain Duignan provided a number of reasons why Zelinski was transferred. Zelinski has presented evidence, contradicting Duignan, to show that a genuine issue of material fact exists pertaining to those reasons. If it is determined that these reasons are merely pretextual, then they can be considered inconsistent reasons for the adverse employment action, ultimately leading to a conclusion of causation. The reasons offered by Captain Duignan for Zelinski's transfer include that 1) Zelinski had an attitude problem, was not a team player, and was difficult to supervise; 2) she bad-mouthed Altieri to other people; 3) she mishandled herself during the execution of a search warrant; 4) she criticized PSP patrol officers; 5) she failed to keep her search warrant probable cause information current; 6) she cancelled a planned undercover drug operation; and 7) she was argumentative during a meeting. Zelinski either denies or offers evidence to negate or contradict each reason.

Viewing all of the other evidence in the light most favorable to Zelinski, the nonmoving party, we believe that a reasonable jury could find in favor of Zelinski regarding the causation element. Therefore, we will vacate **[\*\*19]** the judgment on the the Title VII retaliation claim and remand it to the District Court.

The District Court also granted summary judgment on Zelinski's First Amendment retaliation claim based on its ruling on Zelinski's Title VII retaliation claim. _Zelinski_, 282 F. Supp. 2d at 273, n.22. ("As Zelinski has failed to show any retaliation, it is unnecessary to determine whether her complaint was protected speech," for purposes of her First Amendment retaliation claim.) Because we are remanding on the issue of retaliation, we must now also consider Zelinski's First Amendment retaliation claim. We conclude that there is no validity to the First Amendment claim. As we held in _Azzaro v. County of Allegheny_, 110 F.3d 968, 977 (3d Cir. 1997) (en banc), _HN13_ "the expressive rights of public employees are more restricted than those of public citizens who are not in an employment relationship with the government." (citing _Connick v. Myers_, 461 U.S. 138, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983)). A public employees's speech is protected only if it relates to a matter of public concern, i.e., if "it is important to the process of self-governance that communications **[\*\*20]** on this topic, in this form and in this context, take place." _Id. at 977._

In _Azzaro_, we reversed the District Court's grant of summary judgment to the defendants because Azzaro's speech "brought to light actual wrongdoing on the part of one exercising public authority that would be relevant to the electorate's evaluation of the performance of the office of an elected official." _Id. at 978._ The _Azzaro_ Court contrasted the situation presented in our case:

We are not here presented with a situation in which a public employee has filed a complaint about an isolated incident of what he or she perceived to be inappropriate conduct on the part of a non-supervisory co-worker. While we express no opinion on such a situation, it would presumably be less important to an evaluation of the performance of the **[\*708]** public office involved than the situation now before us.

_Id. at 979 n.4._

Here, Zelinski, a public employee, complained to Altieri about inappropriate conduct by Weinstock, a non-supervisory co-worker. Neither Altieri nor Weinstock work directly under any elected official, and their actions do not appear relevant to the electorate's evaluation of the performance **[\*\*21]** of the office of any elected official. While

speech about sexual harassment and other discrimination is certainly important, neither the form, context, nor content of Zelinski's speech support a finding that it addressed a matter of public concern. *See id. at 976* (whether an employee's conduct addresses a matter of public concern "is to be determined by the 'content, form, and context of a given statement'" (quoting *Connick*, 461 U.S. at 147-48)). Zelinski did not make a public speech about the evils of sexual harassment; she, instead, stated in an informal conversation that a non-supervisory co-worker made improper sexual advances toward her but that she did not desire to see any official action taken. This conversation, while protected under Title VII, has little or no "instrumental value to the community in enabling self-governance," *id. at 977*, and thus does not appear to have addressed a matter of sufficient public concern to warrant First Amendment protection. For those reasons, we will affirm the dismissal of the First Amendment claim.

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor **[**22]** of Trooper Weinstock on the 42 U.S.C. § 1983 claim and the judgment dismissing the First Amendment retaliation claim. We will vacate the judgment on the Title VII discrimination claim and remand it to the District Court for further proceedings consistent with this opinion.

View: Full | Custom

◀━━━━━ 1 of 1 ━━━━━▶

More Like This | More Like Selected Text | *Shepardize*® | TOA

Print | Download | Fax | Email | Text Only

 Zelinski v. Pa. State Police, 108 Fed. Appx. 700

Pages:   12

Service:    Get by LEXSEE®
Citation:   2004 U.S. App. LEXIS 16576
View:    Full
Date/Time:   Wednesday, March 1, 2006 - 4:58 PM EST

* Signal Legend:
⊛ -   Warning: Negative treatment is indicated
Ｑ -   Questioned: Validity questioned by citing refs
⚠ -   Caution: Possible negative treatment
◆ -   Positive treatment is indicated
🅐 -   Citing Refs. With Analysis Available
🅘 -   Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

*My Lexis*™ | Search | Research Tasks | Search Advisor | Get a Document | *Shepard's*® | Alerts

History | Delivery Manager | Switch Client | Preferences | Feedback | Sign Off | Help

⬤® LexisNexis®    About LexisNexis   Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.