**Bayhealth** Medical Center

**EMERGENCY DEPARTMENT**
**ED RECORD - PAGE 1**

**EMERGENCY**

| DATE: | ARRIVAL TIME | TRIAGE TIME | TIME IN | | TETANUS | FMD/CONSULT | POLICE |
|---|---|---|---|---|---|---|---|
| 12-20-02 | 0435 | 0435 | | ☒ WALK IN  ☐ WHEELCHAIR | none | | |
| | | | | ☐ HELICOPTER  ☐ AMBULANCE | | | |

SMITH, KARI M
K02354-00010
126 E COOK AVE
SMYRNA, DE 19977
SEX:F REL:NO  DOB: 03/27/1976 26Y
PHYSICIAN, EMERGENC   12/20/02

ERK
00-2062083
(302)659-0509

| WT: 100 | ACCIDENT: ☐ AUTO  ☐ SCHOOL  ☐ WORK ☐ HOME ☐ OTHER  DATE:  TIME: |
| LMP: | ALLERGIES:  ☒ NKA |
| G | |
| P | |
| AB | |
| BED # | |

ALLERGIES: ☒ NKA

DOMESTIC VIOLENCE SCREENING DONE?
☐ YES      ☐ NO
IF NO, STATE REASON: _____

ISSUES DISCOVERED?  ☐ YES ☒ NO
REFERRAL/ACTION TAKEN? ☐ YES ☒ NO

CHIEF COMPLAINT: _____

| TRIAGE: | TIME | TEMP | P | R | BP | PULSE OX | MONITOR | INIT |
|---|---|---|---|---|---|---|---|---|
| happened anew | 0435 | 97.7 | 72 | 20 | 107/66 | | | MK |
| 1500 a.m. | | | | | | | | |

TRIACE INTERVENTIONS: ☐ ICE  ☐ DRESSING  ☐ OTHER  TREATMENT PRIOR TO ARRIVAL: none
☐ ELEVATED  ☐ GLUCOSE _____
☐ _____ ☐ TRAUMA (IF YES, REFER TO TRAUMA FLOW SHEET)  ☐ FAST TRACK

CURRENT MEDICINES: ☐ UNKNOWN ☒ NONE        MEDICAL HISTORY: ☐ UNKNOWN  ☐ NONE

VISUAL ACUITY: OD___ OS___ OU_____ ☐ W CORRECTION ☐ W/O CORRECTION ☒ N/A

TRIAGE RN SIGNATURE  Madeline C Kendricks

| ☐ CBC | ☐ DIFF | ☐ BMP | CT ☐ HEAD ☐ CHEST | ☐ ABDOMEN | ☐ AEROSOL |
| ☐ LYTES | | ☐ CMP | U/S ☐ HEPATOBILARY | ☐ PELVIS | ☐ PEAK FLOW |
| ☐ GLUCOSE | | ☐ TRAUMA | ☐ EXTREMITY | ☐ ECHO | ☐ OXYGEN |
| ☐ BUN | ☐ CREAT | ☐ THROMBO | C-SPINE ☐ TRAUMA | ☐ COMPLETE | ☐ ABG ☐ PULSE OX |
| ☐ PT | ☐ PTT | ☐ HEPATITIS | THORACIC SPINE ☐ TRAUMA | ☐ COMPLETE | ☐ EKG ☐ MONITOR |
| ☐ CPK | | ☐ LIVER | L/S SPINE ☐ TRAUMA | ☐ COMPLETE | ☐ URINE QUICK PREG |
| ☐ MYOGLOBIN | | ☐ AMYLASE | ☐ CXR ☐ OBSTRUCTIVE SERIES | | ☐ UA ☐ DIP ☐ C&S ☐ URINE TOX |
| ☐ TROPONIN I | | ☐ LIPASE | ☐ PELVIS | | ☐ GC ☐ CHLAMYDIA ☐ TRICH PREP |
| ☐ SED RATE | | ☐ PREG | ☐ SHOULDER L R ☐ ELBOW L R | | ☐ SPUTUM C&S ☐ RAPID STREP |
| ☐ DILANTIN LEVEL | | ☐ TEGRETOL | ☐ WRIST L R ☐ HAND L R | | ☐ FOLEY ☐ NG TUBE |
| ☐ APAP LEVEL | | ☐ ETOH | ☐ HIP L R ☐ TIB/FIB L R | | ☐ IV _____ |
| ☐ ASA LEVEL | | ☐ SERUM TOX | ☐ KNEE L R ☐ ANKLE L R | | |
| ☐ DIG LEVEL | | | ☐ FOOT L R ☐ RIBS L R | | ☐ MEDS _____ |
| ☐ BLOOD CULTURE X _____ | | | OTHER | | |
| ☐ TYPE AND CROSS | | | | | |
| ☐ OTHER | | | | | ☐ DISCHARGE |

| PHYSICIAN NOTES  QualChart ☐ | LAB RESULTS: | ☐ OLD RECORDS  ☐ ED  ☐ INPT |
| EKG Interpretation: _____ | | ☐ ADM MD CALLED @ _____ PT SEEN @ _____ |
| EKG Comparison  ☐ Yes  ☐ No | | ☐ ADMIT CALLED @ _____ ROOM _____ |
| Cardiac Monitor: | | ☐ PT BELONGINGS SHEET DONE  RELEASED TO: _____ |
| Rate:  ☐ Normal ☐ Brady ☐ Tachy | | |
| Rhythm:  ☐ NSR  ☐ Other _____ | | ☐ REPORT FAXED/CALLED @ _____ TO _____ |
| X-Ray Interpretation: | | |

| TIME | MULTIDISCIPLINARY NOTES |
|---|---|
| 0715 | Zithromax 1 gm po ) kpw  Lisine 500 ) po  0735 Dr Victor PL |
| | Phenergan 25 mg po |
| | late note: Lane arrived at 435 |
| 0735 | Above meds given as ordered. D/C inst. given understanding verb. pt. to home c friend  LDU |

| TIME | INITIALS | SIGNATURES | SIGNATURE | DISCHARGE TIME | MODE WITH |
|---|---|---|---|---|---|
| | | | B136 | | RN |

SMITH, KARI M
K02354-00010                00-2062083
126 E COOK AVE              (302)659-0509
SMYRNA, DE 19977
SEX:F REL:NO  DOB:03/27/1976 26Y
PHYSICIAN, EMERGENC         12/20/02

ERK    Baylhealth
Medical Center

EMERGENCY

ED RECORD - PAGE ____

Nursing
Assessment @ 0500  Initials LOL Date 12/20/0

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ N/A | | PAIN HISTORY ☐ N/A | | ABD ☐ N/A | |
| ✓ ALERT | ___ FLAT | | | ✓ SOFT | ___ DISTENDED |
| ___ APPROPRIATE | ✓ HALLUCINATING | LOCATION: ____ | | ___ RIGID | ___ GUARDING |
| ___ AGGRESSIVE | ___ ORIENTED | PROVOKES: ____ | | ___ NAUSEA | ___ VOMITING |
| ___ ANXIOUS | ___ SLOW TO RESPOND | QUALITY: | | ___ DIARRHEA | ___ ANOREXIA |
| ___ DISORIENTED | ___ FEARFUL | ___ SHARP  ___ CRAMPING | | ___ PRESSURE | |

HEART AND LUNGS ☐ N/A

VISION
___ BLURRING  ___ VISION LOSS
___ PHOTOPHOBIA  ___ DRAINAGE
                 ___ REDNESS

NEURO ☐ N/A
15 GCS       ___ HEADACHE
___ PERL     ___ YES  ___ NO
___ LOC      ___ YES  ___ NO
___ PUPIL SIZE  R ___  R / N
                L ___  R / N

BREATH SOUNDS:
✓ CLEAR        ___ WHEEZES
___ CRACKLES   ___ RHONCHI
___ DIMINISHED
COUGH:
___ NONPRODUCTIVE
___ PRODUCTIVE  ___ COLOR
___ DYSPNEA     ___ NASAL FLARING
___ RETRACTIONS ___ STRIDOR
___ JVD

___ DULL   ___ PERSISTENT
___ ACHE   ___ INTERMITTENT
___ HEAVY  ___ OTHER:
___ PRESSURE
RADIATES: ____
SEVERITY: 0/10 SCALE ____
STARTED: ____
DURATION: ____
SIMILAR EPISODE: ____

BOWEL SOUNDS  (___)
LAST BM ____
LAST PO INTAKE ____

GU/GYN ☐ N/A
___ DYSURIA    ___ FREQUENCY
___ HEMATURIA  ___ RETENTION
___ URGENCY    ___ DISCHARGE

SKIN ☐ N/A
___ WARM   ___ COOL
✓ DRY      ___ DIAPHORETIC
___ PINK   ___ PALE
           ___ CYANOTIC

___ PEDAL EDEMA
___ ACCESORY MUSCLES
___ REPRODUCABLE
___ CHEST PAIN 0/10  ___ RADIATION

ENT ☐ N/A
___ EAR DRAINAGE
___ NASAL DRAINAGE
___ THROAT DISCOMFORT
    PAIN

SOFT TISSUE/ORTHO ☐ N/A
___ DEFORMITY   ___ SWELLING
___ NEURO INTACT ___ PULSE
___ NUMBNESS/TINGLING
___ CAP REFILL ___ >2 ___ <2 SEC
___ COLOR ____

| TIME | MULTI-DISCIPLINARY NOTES |
|---|---|
| | |

| TIME/INT | AMOUNT | | IV'S / IVPB | G/SITE | RATE | | TIME | TEMP O/R | P | R | BP | PULSE OX | MONITOR | INIT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | VITAL SIGNS | | | | | | | | |

| | TIME | IV | PO | OTHER | | TIME | URINE | GASTRIC | OTHER |
|---|---|---|---|---|---|---|---|---|---|
| INTAKE | | | | | OUTPUT | | | | |
| TOTAL | | | | | | TOTAL | | | |

INITIALS  SIGNATURES        INITIALS  SIGNATURES
B737                        Dixon-Vick  2NSANE

```
SMITH,KARI M                              ERK
K02354-00010        00-2062083
126 E COOK AVE          (302)659-0509
SMYRNA, DE 19977
SEX:F REL:NO  DOB:03/27/1976 26Y
PHYSICIAN,EMERGENC       12/20/02
```

Authorization for Release of
Information and Evidence to the
Law Enforcement Agency

I hereby authorize the Emergency Department of _____
to release the following information covering the treatment given to me on (date) _____
to (Police Dept) _____

|  | Authorized for Release (YES) | Not Authorized for Release (NO) | Not Applicable |
|---|---|---|---|
| 1. One sealed evidence kit, including specimens collected | ✓ | | |
| 2. One copy of the Sexual Assault medical report form | ✓ | | |
| 3. Photographs of injuries; these photographs may include the genital area | ✓ | | |
| 4. Clothing may be given to the police | ✓ | | |

Article of Clothing                                   Description

Blue Jeans _____

Signature: X _____  Date: _____
Witness: _____  Date: 12-20-02

*    *    *    *    *    *    *    *    *    *    *

### Law Enforcement Receipt of Information

I certify that I have received the following items:
_____ one sealed evidence kit with collected specimens and the sexual assault medical report form.
_____ photographs          number of polaroid photographs_____.
_____ patient's clothing, each article in an individual bag.  Number of bags _____.
_____ other _____

Signature of person **receiving** items listed above: _____

Department: _____  Date: _____ Time: _____

Signature of person **releasing** items listed above: _____

Signature_____ Print_____ Date_____

Page 1

SMITH, KARI M
K02354-00010                    00-2062083
126 E COOK AVE        (302)659-050
SMYRNA, DE 19977
SEX:F REL:NO  DOB:03/27/1976 26Y
PHYSICIAN, EMERGENC        12/20/0

1st SANE _____
2nd SANE _____
Advocate _____ DFS Contact _____
Police Dept. _____ Case # _____
Investigator _____
Date of Examination: _____ Began @ _____    Forensic Kit used?  No  (Yes)

## STATE of DE. MEDICAL REPORT of SUSPECTED SEXUAL ASSAULT

Gender of Patient:  Male  Female   Brought to ED by _____
Race: Asian  Black  Caucasian  Hispanic  Primary Language: English  Spanish  other: _____
Date of Assault: _____ Time: _____ Location: _____

Gender of Assailant:  Male  Female      Age: _____  Weight: _____  Height: _____
Race of Assailant:    Asian    (Black)    Caucasian    Hispanic    Unknown: _____
More than one assailant?  (no)  yes  how many? _____   Assailant known to patient?  no  yes
Name of Assailant:" _____ " Relationship: Friend

### OFFENDER CONTROL OF THE PATIENT

threats of harm               no ✓  yes_____    type of threat _____
patient bound, blindfolded  no ✓  yes_____    physical force _____
beaten, choked                no ✓  yes_____    Patient forced to wash?    no___ yes_____
weapon used                   no ✓  yes_____    type _____
burned, bitten                no ✓  yes_____    Assailant used gloves?    no___ yes_____
Forensic dentist required?  no ✓  yes_____    notified @ _____ (time)
Did the patient experience a loss of consciousness?  no ✓  yes_____  duration _____unk.

At the time of the assault was:
  contraceptive foam or spermicide used?    no ✓    yes_____    unk._____
  lubricant used by the assailant?          no ✓    yes_____    unk._____
  condom used by the assailant?             no ✓    yes_____    unk. ✓
  tampon or sanitary pad present?           no ✓    yes_____    unk._____
  patient menstruating?                     no ✓    yes_____    unk._____

Does the patient suspect that the assailant had any STD's, Hepatitis, HIV, etc.?
    no_____ yes_____ which STD _____ unk. ✓

## POST ASSAULT ACTIVITIES

_____ bathed                        ✓ eaten, drank fluids
_____ changed clothing              _____ douched
_____ urinated/defecated            ✓ vomited
✓ brushed teeth/mouthwash           ✓ smoked
_____ removed/inserted tampon       _____ none of the above
_____ removed sponge/diaphragm      _____ other

Page 2

B139

```
SMITH, KARI M                    ERK
K02354-00010        00-2062083
126 E COOK AVE      (302)659-0509
SMYRNA, DE 19977
SEX:F REL:NO  DOB:03/27/1976 26Y
PHYSICIAN, EMERGENC    12/20/02
```

Patient: _____ ED#: _____ Date: _____

Condition of clothing on ED arrival (ripped, stained, foreign material, buttons torn off, etc.):
_____

_____

_____ n/a – Patient changed clothing
Photos taken? no ____ yes ____   Woods Lamp exam on clothing: neg. ___ pos. ___ n/a ___
Present contraceptive: none___ type _____  Past vaginal delivery: none___ yes__ date _____
Date of last menses _____ Irregular_____  Menses has not yet begun _____ n/a ____
Known to be pregnant now? no ___ yes ___  EDC _____ n/a _____
(If over 20 weeks pregnant, contact L&D for fetal monitoring)
If yes, have you had any intercourse in the past 72 hours?    no____   yes____
If yes, how long ago? _____ hours

## HISTORY of the ASSAULT

Patient's statement and/or pertinent information from other sources (ID source) regarding the assault: _Pt. States ...._ (handwritten)

Penetration of **Vagina** by:
- penis         no_____ yes_✓_ attempted_____ unsure_____
- finger        no_____ yes_✓_ attempted_____ unsure_____
- foreign object  no_✓_ yes_____ attempted_____ unsure_____
- describe the object_____

Penetration of **Rectum** by:
- penis         no_✓_ yes_____ attempted_____ unsure_____
- finger        no_✓_ yes_____ attempted_____ unsure_____
- foreign object  no_✓_ yes_____ attempted_____ unsure_____
- describe the object_____

Oral Copulation of **Genitals:**
- of patient by assailant  no_____ yes_✓_ attempted_____ unsure_____
- of assailant by patient  no_✓_ yes_____ attempted_____ unsure_____

Oral Copulation of **Anus:**
- of patient by assailant  no_✓_ yes_____ attempted_____ unsure_____
- of assailant by patient  no_✓_ yes_____ attempted_____ unsure_____

**Masturbation:**
- of patient by assailant  no_✓_ yes_____ attempted_____ unsure_____
- of assailant by patient  no_✓_ yes_____ attempted_____ unsure_____

Other acts?_____

Page 3

BI 40

S.A.N.E.
History of the Assault
Continuation Notes

SMITH, KARI M
K02354-00010
126 E COOK AVE
SMYRNA, DE 19977          00-2062083        ERK
SEX:F REL:NO              (302)659-0509
PHYSICIAN, EMERGENC    DOB:03/27/1976 26Y
                                  12/20/02

_____ _____ _____ date asked as "How" _____
_____ _____ _____ _____ but he can carry
_____ _____ she was scared but states he had
to keep trying remembering names. She states she was
finally able to get power to try and get away. States
she did not think she got hip. States probably
getting up she counted several times, but Harvey
continued to try and have sex with her. States he
knew more of the names. States after she got hip
he tried to tell her/her to make sure she was not going
to call the police.

Nurse Examiner's
Signature _Linda Dixon-Victor RN_    Print _Linda Dixon-Victor, RN SANE_
           _SANE_

Page 4

B141

```
SMITH,KARI M                    ERK
K02354-00010          00-2062083
126 E COOK AVE        (302)659-0509
SMYRNA,DE 19977
SEX:F REL:NO DOB:03/27/1976 26Y
PHYSICIAN,EMERGENC       12/20/02
```

Patient:_____    ED#_____    Date:_____

Did ejaculation occur?      no_____ yes_____ unk_____
                            If yes, where in/on the body?_____
Woods lamp exam on skin:    neg._____ pos_____ site_____ n/a_____
Distilled water collection? no_____ yes_____ site_____ n/a_____

## PHYSICAL EXAMINATION

Record general physical appearance/injuries/physical pain even if no external signs are present. Include details of trauma such as abrasions, lacerations, erythema, bitemarks, foreign bodies, presence of blood or other secretions, burns, areas of tenderness, swelling, or bruises.

_[handwritten notes, illegible]_

Any vaginal bleeding before or after the assault?          no ✓ yes_____ unknown_____
Any rectal bleeding before or after the assault?           no ✓ yes_____ unknown_____
Any pain in the vaginal area before or after the assault?  no ✓ yes_____ unknown_____
Any pain in the rectal area before or after the assault?   no ✓ yes_____ unknown_____
Any vaginal/penile discharge before or after assault?      no ✓ yes_____ color_____
Photographs taken? (circle on traumagram)                  no_____ yes_____ # of photos_____
Is there evidence of sperm on the wet mount slide?         no_____ yes_____ Motile? no___yes___

### EVIDENCE COLLECTED

| | | | |
|---|---|---|---|
| Serum Samples for Kit: | no___ yes ✓ | Samples For ED: | no ✓ yes___ |
| Saliva Sample: | no___ yes ✓ | Nasal Sample: | no ✓ yes___ |
| Debris Collected: | no ✓ yes___ | Oral Swabs: | no___ yes ✓ |
| Woods lamp exam: | no ✓ yes___ | Hair Combing: | no___ yes ✓ |
| Fingernail scraping: | no ✓ yes___ | Hair Clipping: | no___ yes ✓ |
| Vaginal/Penile Swabs: | no___ yes ✓ | Rectal Swabs: | no ✓ yes___ |
| Vaginal/Penile Cultures: | no ✓ yes___ | Rectal Cultures: | no ✓ yes___ |
| Colpo/Medscope Exam: | no___ yes ✓ | Pictures taken: | no___ yes ✓ |

Page 5

B142

TRAUMAGRAM (FEMALE)    SANE

SMITH, KARI M                              ERK
K02354-00010          00-2062083
126 E COOK AVE        (302)659-0509
SMYRNA, DE 19977
SEX:F REL:NO  DOB:03/27/1976 26Y
PHYSICIAN, EMERGENC      12/20/02



```
#  abrasion
+  bitemark
x  bruise
0  burn
⊛  hematoma
/  laceration
^  puncture
a  scratch
```

SHADE areas of pain or tenderness without obvious injury. CIRCLE areas photographed.
Comments: ↑ redness inside labia folds

---

Mons Veneris ( NFG )  Normal female genital

Clitoris ____ NFG

Labia Majoria  NFG  ↑ redness

Labia Minora ↑ redness

Hymenal Ring ___ NFG

Urethral Oriface ___ NFG

Vagina  abraised / lacerated area vagina opening into beginning of post fourch

Cervix  abraised / bruised area at 4 o'clock

Post. Fourchette  Abraised / lacerated area beginning post fourchette

Fossa navicularis  intact

Anus ____ NFG

Medical Aspect Thigh  No trauma, no injury

Signature _____ Linda Vinn-Victor RN  Print Linda Vinn-Victor, RN  Date 12/20/02

SANE
B143

MARK G. SCHAEFFER, MAYOR



TTORNEY

*Handwritten: Doc*
*"12-02-letter*
*suspending*
*DLeggett w/a*
*pay"*

# Town of Smyrna

DAVID S. HUGG III, TOWN MANAGER

December 20, 2002

Mr. Harvey R. Leggett
103 Frazier Street
Smyrna, Delaware 19977

Dear Mr. Leggett:

I have been advised by Smyrna Police Department of allegations against you for actions that may be of a criminal nature. Pursuant to the provisions of Section 38.2.6 of the Town of Smyrna Personnel Policy, I hereby suspend you with pay effective this date. Such suspension shall continue until such time as charges are brought or you are cleared, after which your status will be reviewed.

Sincerely,

David S. Hugg III
Town Manager

Cc:    Joseph P. Heeger, Public Works Director

**B144**

*rec*
*1-2-03 letter*
*reinstating*
*Legeth with*
*conditions*

January 2, 2003

Mr. Harvey R. Leggett
103 Frazier Street
Smyrna, DE 19977

Dear Harvey:

Per our conversation today, I am reinstating you as of Monday, January 6, 2003 under the following conditions:

- Your time on administrative leave will be charged as vacation and/or sick leave effective January 6.

- You are to have no contact with Kari Smith at any time.

- You are to avoid being on the premises of the Library/Opera House at any time, whether on town duty or not. Should your job duties involve any activities at the Library/Opera House you must consult your supervisor prior to responding.

Should your situation change we reserve the right to review and modify these understandings as appropriate. Reinstatement does not waive other disciplinary action when or as deemed appropriate once your current status has been resolved.

Sincerely,



David S. Hugg III
Town Manager

Cc:     Joseph P. Heeger
        Chief Richard Baldwin

B 145

Kari Smith

Discipline Action-Write up

Safety Issue:

Kari Smith returned to the Library after closing when told previously; that for employee safety reason employees other than the Director will not be allowed to work late or come into the library after hours to work on weekdays or on the weekend.

On December 20, 2002 Kari had opened and entered the library thus breaking the safety policy the Director had set in action based on the Town Managers directives.

Kari and another employee from the public works department went out drinking until late in the night. They visited 2 bars before walking to the library around 3 am. Kari unlocked the door and keyed in the alarm to disarm. While in the library Kari claimed, she was raped. An investigation was thoroughly conducted by Smyrna Police Department and it was turned over to the Attorney Generals office where it was dismissed. Both employees were put on 6 months probation. Both employees were not to have any contact with each other and the public works employee was not to go near the library unless Kari was not there. Arrangements are to be made to schedule work based on Kari's schedule.



EXHIBIT

Hirt 5
Cac 8/3a/05

B 146

Kari Smith

Discipline Action-Write up

Safety Issue:

Kari Smith returned to the Library after closing when told previously; that for employee safety reason employees other than the Director will not be allowed to work late or come into the library after hours to work on weekdays or on the weekend.

On December 20, 2002 Kari had opened and entered the library thus breaking the safety policy the Director had set in action based on the Town Managers directives.

sign : _Kari Smith_

date: _1-6-02_

EXHIBIT

Hist  4

CRC   8/30/05

B 147

Attachment to Kari Smith's evaluation:

EMPLOYEE'S STRONGEST POINTS:
Ms. Smith is very good as Children's Coordinator working with the children. She has demonstrated her knowledge and skills in the areas of creativity and imagination and an overall desire to work with children. During her last 6 months, she has demonstrated her knowledge in both operational and technical computer skills, including computer applications on the Internet.

EMPLOYEE'S WEAKEST POINTS:
Ms. Smith still has difficulties with following through directions given by her supervisor. On occasion, she has demonstrated her stubbornness to follow through these directives but only at her own convince. She has continually shown difficulties distinguishing between high and low priorities and sometimes has to be reminded to complete assigned tasks. Safety issues still remain a potential priority issue. She must be aware there are consequences from carelessness and accidents can be prevented especially when the public and children are involved.

Steps being taken to correct this:
Review and counseling on this day of 1/06/03. The length of Ms Smith's probation is extended to include 6 month, ending 7/06/03. At which during this time any misconduct, stubbornness, or insubordination from Ms. Smith will result in her termination from this position.

EMPLOYEE'S POTENTIALITIES:
Ms. Smith has great potentials of becoming an excellent Children's Coordinator. She has the ability to grow and learn with the library.

Note:
Time called in and taken "off" during the 6-month probation period

Part time status 3/22/01
Full time status 7/04/02

Excessive "Time off" taken during probation period:
7/29/02
8/5/02
8/12/02
8/26/02

Warning notice was issued on 8/27/02 for taking excessive time off
10/4/02
11/4/02
12/2/02
12/20/02

B 148

11-03

Kari - asked me to look
outside and tell her who
was working?

I answered that it was
Harvey - she asked why
is he here, I told her he's
working - doing the sandblasti-
of the curb and she asked -
why him - I said - is his
job - and he is outside -
he is not to come inside
we are closed and the door
is clocked - he is out
there with another employee
and all suited up - face
mask etc - that he cannot
do her any harm____. He
is allowed outside to work
and inside when she is not
here — only for work
purposes — I told her I'd do
the bookdrop, she went to her office
(staffroom) and shut the door —
She did not speak to me



EXHIBIT

Hirt   7

Cac____    8/30/05

after that —

I asked (her) twice after they left, if she'd go get the door sign — She did not — So because the sign shop closed at 4, I had to pick it up — since I was going over to town Hall!

I really have no clue to why she is giving me the silent treatment — since I made sure Harvey did not come close to the library and I offered to do her job of getting the book drop and changing the flag and checking the mail box —

B 150

I went outside put the flag up and told Harvey he knew he was not to be inside the library — He said he understands what he is not allowed to do — that he has no — business of work to do inside and not to worry — he is just Sandblasting then will be cleaning there —

I observed him, the time he was there — He maintained no contact w/ anyone here and only left once during the entire sandblasting process. He never came near the doors or windows

Kari was upset she to

take her break out back
Cause she was still out front.
but she was still able to
Smoke outside without any
Contact w/ him or his worker

When I arrived at Town Hall, Dane informed me that Kari had an appointment with him. I did not realize this — she said nothing to me. He asked if I knew what about, I said — Had no idea!

When I got to my office a note was on my door — that she had an appointment w/ Dane at 9am — I asked why — she did not answer me. I am getting the "Silent" treatment from her — ALL DAY —

She has not told me or asked to discuss with me what is wrong — She has broken the chain of command by going to my boss and not to me directly —



EXHIBIT

# TOWN OF SMYRNA



# PERSONNEL POLICY

B 154

## 4. Performance Evaluations

### 4.1 Policy.

The purpose of the performance evaluation is to manage the performance of employees. Objectives of the performance evaluation process are to measure the effectiveness of the work force in meeting established goals and objectives, provide feedback to the employee on job performance, assess employee recruitment practices, provide a basis for personnel decisions and maintain written documentation of employee's work records.

### 4.2 Procedure.

#### 4.2.1 Authority and Responsibility.

The Town Manager is responsible for administering the personnel policy, including overseeing the evaluation process, developing evaluation procedures, initiating employee evaluations, maintaining the Town's official personnel files and submitting reports to the Business Office for payroll changes. The employee's immediate supervisor is responsible for assigning work, monitoring work performance and recommending the appropriate personnel action based upon the results of the evaluation.

#### 4.2.2 Probationary Period Evaluations.

The probationary period evaluations occur at three (3) months, six (6) months, and twelve (12) months of employment. They serve the following purposes:

a) to enable the supervisor to clarify job responsibilities and advise the employee of problem areas where improvements are needed

b) to enable the employer to assess the employee's work potential and whether the employee meets the minimum job requirements

c) to serve as the final screening method in the employee recruitment process

B 155

### 4.2.3 Probationary Period Dismissal.

Department supervisors may recommend dismissal of an unsatisfactory employee at any time during the probationary period. Department supervisors shall specifically recommend the retention or dismissal of the employee based on the supervisor's evaluation of the employee's performance during the probationary period. The department supervisor shall indicate the following in writing to the Town Manager:

      a) that the employee's supervisor has discussed the new employee's progress (accomplishments, strengths and weaknesses) with the new employee

      b) whether the new employee is performing satisfactory work

      c) whether the probationary period should be extended provided, however, that no employee shall remain in a probationary status for more than one (1) year from the date of employment

      d) whether the employee should be retained in the present position or should be released, transferred or demoted.

### 4.2.4 Annual Evaluation.

      a) Each regular employee will be evaluated at least once annually shortly before their review date.

      b) This evaluation, to be a constructive part of the total Personnel Policy, will be reviewed by the employee and the evaluator. Any disagreements regarding this evaluation should be taken to the Town Manager for further discussion. Any continuing and unresolved personnel problems will be reviewed by the Town Manager who may change the rating on the evaluation. The Town Manager's decision is final, and not grievable.

### 4.2.5 Evaluation Forms.

All Town employees will be evaluated on forms developed by the Town Manager and approved by the Mayor and Town Council.

B 156

20. Sexual Harassment.

20.1 Policy.

Sexual harassment is a form of employee misconduct which undermines the integrity of the employment relationship. Each employee of the Town of Smyrna, regardless of gender, is entitled to a working environment which is free from intimidation and sexual harassment. The Town shall not tolerate any form of sexual harassment by any employee of either gender.

20.2 Prohibited Practices.

Sexual harassment does not refer to behavior or occasional compliments of a socially acceptable nature. It refers to behavior that is not welcome, that is personally offensive, that fails to respect the rights of others, that debilitates morale and that, therefore, interferes with the work effectiveness of its victims and their co-workers. The following practices are prohibited:

20.2.1 Making an unwelcome sexual advance, a request for sexual favors, or other verbal or physical conduct of a sexual nature a condition of employment for any applicant.

20.2.2 Making the submission to or the rejection of such conduct the basis for an employment decision affecting an applicant or employee.

20.2.3 Creating an intimidating, hostile or offensive working environment by such conduct.

20.2.4 Sexual harassment may be manifested in different ways. One of these is the demand for sexual favors. Other forms of sexual harassment which are also prohibited include:

a) Verbal

   ◉ sexual innuendos

   ◉ suggestive comments

   ◉ jokes of a sexual nature

Page 59

B 157

⊕ sexual propositions

⊕ threats

b) Non-Verbal

⊕ sexually suggestive objects or pictures

⊕ graphic comments

⊕ suggestive or insulting sounds

⊕ leering

⊕ whistling

⊕ obscene gestures

c) Physical

⊕ unwanted physical contact such as touching, brushing the body

⊕ coerced sexual intercourse

⊕ assault

Sexual harassment may be overt or subtle. Some behavior which may be appropriate in a social setting may not be appropriate or permitted in the workplace. Regardless of the form it takes, verbal or physical, sexual harassment can be insulting and demeaning to the recipient and will not be tolerated. Each employee will be expected to comply with this policy and take appropriate measures o ensure that any inappropriate conduct does not occur.

20.3 Complaint Procedure.

20.3.1 Complaint. (Amended 11/2/98)

Each employee who believes that he or she is or has been the subject of sexual harassment shall report the alleged act to his/her supervisor and to the Town Manager as promptly as reasonably possible under the circumstances; provided, however,

that, if the complaint involves the supervisor, it shall be filed with the next higher level of supervision and, if it involves the Town Manager, it shall be filed with the Mayor who shall present the matter to the Town Council in Executive Session.

20.3.2 Investigation.

The Town Manager or a designated representative shall investigate all alleged violations of this policy in a timely and confidential manner. Information concerning the complaint will not be released by the Town to any third party or to any Town employee who is not involved with the investigation of the complaint. Each employee is prohibited from discussing the complaint outside the investigation process other than with legal counsel. The purpose of this provision is to protect the confidentiality of the complainant, to encourage the reporting of any incidents of sexual harassment, and to protect the reputation of any employee wrongfully charged with sexual harassment. The investigation of the complaint will normally include conferring with the parties involved and any named or apparent witnesses. Each employee shall be guaranteed the right to a fair and impartial hearing. Each employee shall be protected from coercion, intimidation, retaliation, interference or discrimination for filing a complaint or providing information during the investigation.

20.4 Disciplinary Action.

Each employee who violates this policy may be subject to appropriate disciplinary action up to and including termination of employment. Disciplinary action shall depend upon the severity of the incident.

Provided, however, that any performance evaluation conducted and/or Section 4.2.2 shall not be grievable.

39.2.2 Grievance Procedure.

When an employee has a grievance, the following successive steps are to be taken. The number of days for each step should be considered the maximum number of working days unless otherwise provided and every effort should be made to expedite the process. Time limits at any step, however, may be extended by mutual consent. All documents used in this procedure must be dated and signed by the respondent and recipient. The procedure for the presentation, consideration and disposition of employee grievances is as follows:

a) An employee, who has completed the probationary period may, within ten (10) working days of the cause of a grievance, present the grievance in writing to his or her department supervisor. The supervisor shall, within five (5) working days of receiving an employee's written grievance, meet and discuss the grievance with the employee and then reply in writing to the employee within five (5) working days of their meeting. The grievance and the answer shall be reported to the Town Manager.

b) In the event the immediate supervisor's decision is not satisfactory to the employee, the employee may, within five (5) working days of receiving the supervisor's written reply, present an appeal in writing to the Town Manager. The Town Manager shall confer with the employee and the department supervisor about the grievance within five (5) working days after the appeal is presented and shall render a written decision to the employee within ten (10) working days.

c) The Town Manager's decision shall be final unless an appeal is filed with the Mayor and Town Council within ten (10) working days. A hearing shall be scheduled within thirty (30) working days of the appeal being submitted to the Mayor and Town Council. The Mayor and Town Council will render a written decision to the employee within ten (10) working days.

39.2.3 Nothing in the grievance procedure shall be construed to modify the rights of the Town of Smyrna to justly hire, transfer, reward, demote or dismiss employees or to determine the methods, means and personnel affecting the efficient operation of the Town's business.

B 160

# EMPLOYEE PROGRESS REPORT

Employee __Kari Smith__                    Date __May 12-03__
                              Job Classification __Children's Program__

THIS REPORT IS MADE OUT FOR (CHECK ONE):  ( ) 90 days    ( X ) 3 Months    ( ) Annual
                                          ( ) Promotion   ( ) Transfer      ( ) Exit

This rating sheet provides a practical method through which the ability of the individual can be judged with a reasonable degree of accuracy and uniformity. Indicate your opinion of this employee by placing an "X" in the block by the phrase which seems to fit the person best. Please follow these instructions carefully:

1. Use your own independent judgement.
2. Disregard your general impression of the person and concentrate on one factor at a time.
3. When rating an employee, call to mind instances that are typical of his work and way of acting.

Do not be influenced by UNUSUAL SITUATIONS that are not typical.
4. Make your rating with the utmost care and thought. Be sure that it represents a fair and square opinion. DON'T ALLOW PERSONAL FEELINGS TO GOVERN YOUR RATING .

## . ATTENDANCE
1. Punctuality
   a. ( ) Always on time
   b. (X) Occasionally late
   c. ( ) Requires occasional reminding
   d. ( ) Often tardy - job apparently of secondary importance
   e. ( ) Always tardy

2. Dependability
   a. ( ) Perfect record since last rating
   b. (X) Rarely absent
   c. ( ) Frequently absent - but for cause
   d. ( ) Poor record - requires counseling
   e. ( ) Unsatisfactory - work suffers

3. Notification
   a. (X) Always on time
   b. ( ) Notifies but usually too late to get substitute
   c. ( ) Occasionally late or absent without notification
   d. ( ) Requires inquiry as to why late or absent
   e. ( ) Often fails to notify

## II. PERSONAL QUALIFICATIONS
1. Appearance
   a. (X) Neat and in good taste
   b. ( ) Neat but occasionally not in good taste
   c. ( ) Untidy
   d. ( ) Unsuitable for job

2. Personality
   a. ( ) Exceptionally pleasing - a decided asset
   b. (X) Makes good impression - wears well
   c. ( ) Makes good first impression only - doesn't wear well
   d. ( ) Makes fair impression only
   e. ( ) Creates unfavorable impression

3. Tact and Courtesy
   a. ( ) Shows exceptional tact and courtesy
   b. (X) Tactful and considerate of others
   c. ( ) Occasionally untactful and inconsiderate
   d. ( ) Attains goal but arouses antagonism
   e. ( ) Often breeds trouble

1. Ability to learn
   a. ( ) Learns with exceptional rapidity
   b. ( ) Grasps instructions readily
   c. (X) Average ability to learn new things
   d. ( ) Somewhat slow in learning
   e. ( ) Limited in learning new duties

## III. CAPACITY
2. Initiative
   a. ( ) Always finds extra work to do
   b. ( ) Pushes work through on own initiative
   c. (X) Normal supervision required - not a self starter
   d. ( ) Needs considerable supervision
   e. ( ) Must always be told what to do

3. Judgement
   a. ( ) Outstanding ability to reach sound and logical conclusions
   b. ( ) Action generally based on good reasoning
   c. ( ) Average Judgement
   d. (X) Usually makes decisions without considering all alternatives
   e. ( ) Conclusions often faulty

EXHIBIT
Hirt 9
C.a.a  8/30/55

Date of last written evaluation __1-4-03__

Number days __absent__ during past __3__ months __2__

Number days __late__ during past __3__ months __1__

B 161

MPLOYEE PROGRESS REPORT

'.  TITUDE TOWARD JOB

1. Interest
   a. ( ) Shows intense enthusiasm and
         interest in all work
   b. (x) Shows interest; enthusiasm is not sustained
   c. ( ) Passive acceptance; rarely shows enthusiasm
   d. ( ) Shows little or no interest
   e. ( ) Dislikes work

2. Cooperation
   a. ( ) Goes all out to cooperate with
         associates and management
   b. ( ) Promotes cooperation and good will
   c. (x) Moderately successful in cooperating
         with others
   d. ( ) Cooperates reluctantly and sometimes
         causes dissension
   e. ( ) Uncooperative. Often breeds trouble

3. Responsibility
   a. ( ) Seeks additional responsibilities
   b. (x) Willingly accepts additional responsibilities
   c. ( ) Reluctant to accept additional responsibilities
   d. ( ) Avoids responsibility
   e. ( ) Cannot be depended upon

V.  JOB PERFORMANCE

1. Accuracy
   a. ( ) Rarely makes mistakes
   b. ( ) Above average
   c. (x) Average
   d. ( ) Below average
   e. ( ) Highly inaccurate

2. Neatness
   a. ( ) Takes pride in appearance of work.
         Has "sense" of neatness
   b. (x) Usually turns out neat work
   c. ( ) Apparently lacks "sense" of neatness.
         Requires reminding
   d. ( ) Too often sacrifices neatness for quantity
   e. ( ) Majority of work must be done over

3. Quantity
   a. ( ) Unusually high output — meets emergency
         demands well
   b. ( ) Consistently turns out more than average
   c. (x) Finishes allotted amount
   d. ( ) Does just enough to get by
   e. ( ) Amount of work done is inadequate

How long has this person been under your supervision?_____ 26 months

What do you consider his (or her) STRONGEST POINTS?____ see attached

What do you consider his (or her) WEAKEST POINTS?____ see attached

What steps are being taken to correct this (or these) weakness?__ see attached

Give a brief appraisal of employee's potentialities:_____ see attached

Has this report been discussed with employee?   (x) Yes   ( ) No   If not, why?_____

_Signature — Department Head or Supervisor_     5·12·03
                                                 Director

Employees signature

5-12-03

CRIM LTCD No. 9 (R 2/85)

B 162

# Employee Progress Report

**Attachment to Kari Smith's evaluation:**
**4-6-03**

## EMPLOYEE'S STRONGEST POINTS:

Ms. Smith is very good at conducting activities as Children's Program Coordinator and working with the children. She has demonstrated her knowledge and skills in the areas of creativity and imagination plus an overall desire to work with children of all ages. Since her last evaluation, she has demonstrated both knowledge and technical computer skills, including computer applications on the Internet. She has also demonstrated her carpentry abilities with the conference table and helping make repairs around the library when needed.

## EMPLOYEE'S WEAKEST POINTS:

Ms. Smith has shown a continued stubbornness against following procedures and policy set forth by the Town and the Library department. On March 11, 2003, Kari did not follow the proper chain of command and went to my Supervisor about a problem before informing or discussing to me about the nature of her complaint. I did find out from my supervisor that she made the complaint based on a misunderstanding, which did lead to two weeks of her silence, leading to a hostile work environment. On two other occasions the dress code policy was not followed during program nights.

There are still some difficulties with following through on directions given by her supervisor. On occasion, she has demonstrated her stubbornness to follow through these directives but only at her own convince. Although she has made progress distinguishing between high and low priorities since the last evaluation, she still has to be reminded to complete assigned tasks.

Steps being taken to correct this:

Kari was given a copy of the grievance policy to follow when filing a complaint and a dress code reminder memo was initiated. With continued State training in the area of children's program activities and State computer course updates on the newest software applications, Kari will be an asset to her department. Two computer courses have been assigned.

## EMPLOYEE'S POTENTIALITIES:

Ms. Smith continues to show she has great potentials to excel as a professional Children's Program Coordinator. She also has the ability to grow and learn with the library.

SS for Drew for Meloney

# TOWN OF SMYRNA

## EMPLOYEE HANDBOOK



### APRIL 1996

# TABLE OF CONTENTS

Town Manager's Message. . . . . . . . . . . . . . . . . . . . 1

Employment Policies . . . . . . . . . . . . . . . . . . . 2

The Personnel System . . . . . . . . . . . . . . . . . . . 2

Compensation . . . . . . . . . . . . . . . . . . . . . . 2

Pay Day/Pay Period . . . . . . . . . . . . . . . . . . . 3

Deductions . . . . . . . . . . . . . . . . . . . . . . . 3

Probationary Period . . . . . . . . . . . . . . . . . . . 3

Promotions . . . . . . . . . . . . . . . . . . . . . . . 3

Performance Evaluations . . . . . . . . . . . . . . . . . 3

Attendance . . . . . . . . . . . . . . . . . . . . . . . 4

General Employee Work Practices . . . . . . . . . . . . . 4

Gifts and Favors . . . . . . . . . . . . . . . . . . . . 4

Hours and Days of Work . . . . . . . . . . . . . . . . . 5

Outside Employment . . . . . . . . . . . . . . . . . . . 5

Driver's License Requirement . . . . . . . . . . . . . . 6

Motor Vehicle Accidents . . . . . . . . . . . . . . . . . 6

Personal Use of Town Property . . . . . . . . . . . . . . 6

Political Activities of Employees . . . . . . . . . . . . 6

Sexual Harassment . . . . . . . . . . . . . . . . . . . . 7

Smoking in the Workplace . . . . . . . . . . . . . . . . 7

Substance Abuse . . . . . . . . . . . . . . . . . . . . . 8

Leaves of Absence . . . . . . . . . . . . . . . . . . . . 8

Administrative Leave . . . . . . . . . . . . . . . . . . 8

Civil Leave . . . . . . . . . . . . . . . . . . . . . . . 8

Dependent Leave . . . . . . . . . . . . . . . . . . . . . 8

Family and Medical Leave . . . . . . . . . . . . . . . . 8

Funeral Leave . . . . . . . . . . . . . . . . . . . . . 9

Holidays . . . . . . . . . . . . . . . . . . . . . . . 9

Maternity Leave . . . . . . . . . . . . . . . . . . . 10

Medical Leave . . . . . . . . . . . . . . . . . . . . 10

Military Leave . . . . . . . . . . . . . . . . . . . 10

Sick Leave . . . . . . . . . . . . . . . . . . . . . 11

Special Leave . . . . . . . . . . . . . . . . . . . . 11

Training and Development . . . . . . . . . . . . . . 11

Unpaid Leave of Absence . . . . . . . . . . . . . . . 11

Vacation Leave . . . . . . . . . . . . . . . . . . . 12

Worker's Compensation Leave . . . . . . . . . . . . . 12

Disciplinary Action . . . . . . . . . . . . . . . . . 13

Grievance . . . . . . . . . . . . . . . . . . . . . . 15

Separation . . . . . . . . . . . . . . . . . . . . . 16

Conclusion . . . . . . . . . . . . . . . . . . . . . 17

## Driver's License Requirement

Each employee who operates any Town-owned vehicle must have a valid driver's license and must be of insurable status. In addition, Street Department and Electric Department employees are required to have a CDL license upon full-time employment or within a time designated by the Town Manager if the driving of a vehicle is required in his or her job description. Any employee who loses the right to drive is prevented from fully executing his or her duties. If your driving privileges are suspended or revoked or you have been placed on an uninsurable status by the Town's insurance carrier you shall notify your department supervisor immediately. In addition, you shall cease operating any Town vehicle or equipment which requires a driver's license.

## Motor Vehicle Accidents

Each employee of the Town of Smyrna who operates any Town owned vehicle or equipment is expected to exercise reasonable care and caution so as not to cause excessive deterioration or unnecessary damage. If you are involved in an accident while operating a Town vehicle, you are required to report such accident to the Police immediately, regardless of the severity of the accident or the extent of the property damage. You shall also notify your department supervisor. You may be required to reimburse the cost of repairs or replacement if the accident is the result of your negligence.

## Personal Use of Town Property

Town equipment, materials, tools and supplies shall not be available for personal use nor be removed from Town property, except in the conduct of official Town business or after receiving permission from your supervisor with approval granted by the Town Manager. No individual shall operate or ride in a Town vehicle except as is required for the conduct of Town business.

## Political Activities of Employees

The position of the Town of Smyrna as a public organization imposes upon you special responsibilities for the use of good judgement in political matters. Employees of the Town of Smyrna shall not:

Solicit money, influence, or anything else of value for a Town election;

B 167

Profane, obscene, or insulting words toward the public or other Town employees;

Failure to reimburse the Town for funds due;

Membership in any organization which advocates the violent overthrow of any legally constituted government by force;

Threatening, intimidating, harassing or interfering with employees or supervisors at any time;

Any other conduct of an employee which is not in keeping with standards applicable to such employee in the performance of his or her work;

Acceptance of any valuable consideration which was given with the expectation of influencing the employee in the performance of his/her duties;

## Grievance

Legitimate problems and differences of opinions may arise between a supervisor and an employee. A grievance is a formal written complaint by an employee arising out of a misunderstanding or disagreement between an employee and supervisor which expresses dissatisfaction concerning a condition of employment or treatment by management, supervisors or other employees. In the event a problem cannot be settled informally through oral discussions with an employee's supervisor, a grievance may be filed if an employee is adversely affected and if the employee alleges:

Violation, misinterpretation or improper application of established laws, regulations, procedures or policies;

Improper or unfair act by a supervisor or other employee which may include coercion, restraint, reprisal, harassment or intimidation;

Improper, inequitable or unfair act in the administration of the merit system which may include promotional opportunities, selection for training, duty assignments, work schedules, transfers and reductions in force;

Improper, inequitable or unfair application of compensation, policies and employee benefits which may include salary, pay differentials, awards, overtime pay, leave, insurance, retirement and holidays;

Disciplinary action involving that employee which disciplinary action involves a written reprimand, suspension, or dismissal;

If you wish to file a grievance, the following successive steps are

15

B 168

to be taken:

You may, within ten (10) working days of the cause of a grievance, present the grievance in writing to your department supervisor.

The supervisor shall, within five (5) working days of receiving your written grievance, meet and discuss the grievance with you and then reply in writing to you within five (5) working days of that meeting.  The grievance and the answer shall be reported to the Town Manager.

In the event the immediate supervisor's decision is not satisfactory to you, you may, within five (5) working days of receiving the supervisor's written reply, present an appeal in writing to the Town Manager.

The Town Manager shall confer with you and the department supervisor about the grievance within five (5) working days after the appeal is presented and shall render a written decision to the employee within ten (10) working days.

## Separation

All separations of employees from positions in the service of the Town shall be designated as one of the following types:

Resignation - in order to resign in good standing, you shall give two (2) weeks notice of your intention to terminate employment. Such notice should be given in writing to your department supervisor.  You are encouraged to inform your supervisor as far in advance of separation as possible to enable the supervisor to prepare for the position vacancy.

Reduction in force - in the event that a reduction in force becomes necessary, consideration shall be given to the quality of each employee's past performance, the need for the employee's service, and seniority in determining those employees to be retained. Employees who are laid off because of a reduction in force shall be given at least two (2) weeks' notice of anticipated layoff.

Retirement - your normal retirement date will be on your 65th birthday.  Your monthly retirement benefits begin on the first day of the month following that date of your 65th birthday if that falls on the first day of the month.  Benefits will continue to be paid in accordance with the form of payment that the employee has elected.  If you have attained age 55 and have completed at least ten (10) years of Vesting Service, you may elect an early retirement date.  Your monthly retirement benefits can begin on the first day of any month between your early retirement and your normal retirement date.

B 169

TOWN OF DALLAS
APPLICATION FOR LEAVE

E#1

NAME  _Smith_____  _Kari____  _M____  I.D. # _____
         Last          First       Middle

DEPARTMENT  _Library_____

I hereby request:

___✓___  Vacation Leave          _____  Personal Day

_____  Sick Leave              _____  Compensatory Time

_____  Leave Without Pay       _____  Other (specify)

                                 _____

From:                            To:

Date: _6·30·03_  Time: _9:00AM_  Date: _7·2·03_  Time: _5:00PM_
   _(except 6-8 pm 7-1-03)_

Total Hours: _22_____             _Kari M Smith_
                                  Employee Signature
Total Days: _2 3/4___
                                      _6·16·03_
                                        Date


-------------------OFFICIAL ACTION ON APPLICATION-----------------

Is Physician's Certification Required?    ____ Yes    _✓_ No

If "yes", is Certification Attached?      ____ Yes    _✓_ No

Application Approved?                      _✓_ Yes     ____ No

                                  _Beverly O'West_
                                  Supervisor Signature

                                      _6·16·03_
                                        Date

REMARKS: _No Babysitter_____

_____

_____

B 170

## Smyrna Public Library

107 South Main Street
Smyrna, Delaware 19977

——————

Phone 653-4579

July 7, 2003

Kari M. Smith
Children's Program Coordinator
Smyrna Public Library

Dear Kari:

We regret to inform you that your employment with the Town of Smyrna, Smyrna Public Library is terminated effective today, July 7, 2003 and will not be renewed beyond this date for the following reason[s]:     Misconduct
1. Falsifying information on a vacation slip
2. Absent without approved leave
3. Failed to get supervisors approval to have another employee cover your scheduled program

On January 4, 2003, you were placed on extended probation for an additional 6 months for not following work policy. At that time, I indicated that any misconduct, stubbornness, or insubordination on your part would result in your termination. This subject had been discussed several times before, and you have received two previous evaluations counseling you about this type of behavior. I expected an immediate and sustained improvement of your work performance. During the first month of your extended probation, I did note some improvement; however, it has not continued. Within the past three months, most of the problems cited in the written evaluations and counseling memos have reoccurred.

On Monday, July 16th I approved your vacation slip to take 2 ¾ days because you did not have a babysitter. I did mention at first that you could not because another employee had scheduled a vacation during that time. You said ok. Later that day you approached me stating that the other employee had cancelled her scheduled vacation and that the library would have enough coverage so you could have the requested time off. I also brought up the point that you had a Summer Reading Program scheduled from 6:00-8:00 pm. You stated you would return to work to do the program since you were not going anywhere and questioned if it was okay to bring your son with you since you did not have a babysitter. I approved your request and turned in your slip. On Tuesday, July 1st while reviewing payroll I found out that you did not work your scheduled time and in fact you had pre-arranged for another employee 2 weeks prior to work your schedule because you would be out of town. You did not get my approval to do this. Therefore, due to continued unacceptable performance, your employment is terminated. For information regarding pay, please contact the Payroll Department at 653-9231. Please return any company property (keys, computer discs, program information etc.) that are in your possession.

Given your qualifications and proven abilities, I am confident that you will be able to find another position. I personally wish you success in your future endeavors.

Sincerely,

Beverly A. Hirt
Director-Smyrna Public Library

cc: Dave Hugg, Town Manager

Kari Smith

Home Phone 302-659-0509

July 18, 2003

David S. Hugg, III
Town Manager
Smyrna Town Hall
27 South Market Street Plaza
Smyrna, DE 19977

*[handwritten notes in right margin: 4.2.3 ...; ... 39.2.2 don't apply]*

Mr. Hugg,

I am filing a grievance against my former supervisor, Beverly Hirt, for misrepresentation and wrongful termination of my employment. I am requesting a meeting with you to discuss the inappropriate disciplinary action taken against me. I have reviewed the employee handbook and the omission I am accused of is not serious enough to warrant termination. This situation requires your review. Please contact me at your earliest opportunity to schedule a meeting. Thank you for your time and consideration in this matter.

Sincerely,

Kari M. Smith

B172

MARK G. SCHAEFFER, MAYOR                                           JOHN TERENCE JAYWORK, ATTORNEY



# Town of Smyrna

DAVID S. HUGG III, TOWN MANAGER

July 18, 2003

Ms. Kari Smith
97 Skyline Locust Drive
Smyrna, DE  19977

Dear Ms. Smith:

In response to your letter of July 18, 2003 filing a grievance, your employment with the Town of Smyrna was terminated at the end of your probationary period in accordance with 4.2.3 of the Smyrna Personnel Policy.

Therefore, the provisions of 39.2.2 dealing with grievance procedures do not apply to this situation.

Sincerely,

TOWN OF SMYRNA

David S. Hugg III
Town Manager

DSH/ccm

RODERICK H. BURRITT • A. TEMPLE CARTER III • D. SUE HENSLEY • WILLIAM W. HILL • NELSON MESICK • LEONARD I. RIPPA
27 SOUTH MARKET STREET PLAZA • P.O. BOX 307 • SMYRNA, DELAWARE 19977

B 173

Kari Smith

97 Skyline Locust Drive
Smyrna, DE 19977

Home Phone 302-659-0509

July 30, 2003

David S. Hugg, III
Town Manager
Smyrna Town Hall
27 South Market Street Plaza
Smyrna, DE 19977

TOWN OF SMYRNA

JUL 3 0 2003

RECEIVED

Mr. Hugg,

I appeal your decision to disallow my grievance as stated in your letter dated July 18, 2003.

Sincerely,

Kari M. Smith

B174

MARK G. SCHAEFFER, MAYOR



JOHN TERENCE JAYWORK, ATTORNEY

# Town of Smyrna

### DAVID S. HUGG III, TOWN MANAGER

July 30, 2003

Ms. Kari Smith
97 Skyline Locust Drive
Smyrna, DE 19977

Dear Ms. Smith:

Please accept this letter as my response to your letter of July 30, 2003, stating that you wish to appeal my decision dated July 18, 2003.

As I stated in my previous letter, your employment with the Town was terminated at the end of your probationary period in accordance with the provisions of Section 4.2.3 (copy attached) of the Town of Smyrna Personnel Policy. Section 39.2.2 Grievance Procedure a) (copy attached) clearly states that the grievance procedure is available to employees who have completed their probationary period. Since your employment did not continue beyond your probationary period, I stand by my original decision that the grievance procedure does not apply.

Sincerely,

TOWN OF SMYRNA

David S. Hugg III
Town Manager

DSH/ccm

RODERICK H. BURRITT • A. TEMPLE CARTER III • D. SUE HENSLEY • WILLIAM W. HILL • NELSON MESICK • LEONARD I. RIPPA
27 SOUTH MARKET STREET PLAZA • P.O. BOX 307 • SMYRNA, DELAWARE 19977

R 175

*The U.S. Equal Employment Opportunity Commission*

| ,L M | | Number |
|------|------|--------|
| **EEOC** | ***NOTICE*** | **N-915-050** |
| | | **Date** |
| | | **3/19/90** |

1. <u>SUBJECT:</u> Policy Guidance on Current Issues of Sexual Harassment.

2. <u>EFFECTIVE DATE:</u> Upon receipt.

3. <u>EXPIRATION DATE:</u> As an exception to EEOC Order 295.001, Appendix B, Attachment 4, § a(5), this notice will remain in effect until rescinded or superseded.

4. <u>SUBJECT MATTER</u>:

This document provides guidance on defining sexual harassment and establishing employer liability in light of recent cases.

Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a) provides:

It shall be an unlawful employment practice for an employer - -

... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

In 1980 the Commission issued guidelines declaring sexual harassment a violation of Section 703 of Title VII, establishing criteria for determining when unwelcome conduct of a sexual nature constitutes sexual harassment, defining the circumstances under which an employer may be held liable, and suggesting affirmative steps an employer should take to prevent sexual harassment. <u>See</u> Section 1604.11 of the Guidelines on Discrimination Because of Sex, 29 C.F.R. § 1604.11 ("Guidelines"). The Commission has applied the Guidelines in its enforcement litigation, and many lower courts have relied on the Guidelines.

The issue of whether sexual harassment violates Title VII reached the Supreme Court in 1986 in <u>Meritor Savings Bank v. Vinson</u>, 106 S. Ct. 2399, 40 EPD ¶ 36,159 (1986). The Court affirmed the basic premises of the Guidelines as well as the Commission's definition. The purpose of this document is to provide guidance on the following issues in light of the developing law after <u>Vinson</u>:

- determining whether sexual conduct is "unwelcome";
- evaluating evidence of harassment;
- determining whether a work environment is sexually "hostile";
- holding employers liable for sexual harassment by supervisors; and
- evaluating preventive and remedial action taken in response to claims of sexual harassment.

# BACKGROUND

## A. Definition

3 176

employees of their right to raise and how to raise the issue of harassment under Title VII, and developing methods to sensitize all concerned.

29 C.F.R. § 1604.11(f). An effective preventive program should include an explicit policy against sexual harassment that is clearly and regularly communicated to employees and effectively implemented. The employer should affirmatively raise the subject with all supervisory and non- supervisory employees, express strong disapproval, and explain the sanctions for harassment. The employer should also have a procedure for resolving sexual harassment complaints. The procedure should be designed to "encourage victims of harassment to come forward" and should not require a victim to complain first to the offending supervisor. See Vinson, 106 S. Ct. at 2408. It should ensure confidentiality as much as possible and provide effective remedies, including protection of victims and witnesses against retaliation.

## 2) **Remedial Action** - Since Title VII

"affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult" (Vinson), 106 S. Ct. at 2405), an employer is liable for failing to remedy known hostile or offensive work environments. See, e.g., Garziano v. E.I. Dupont de Nemours & Co., 818 F.2d 380, 388, 43 EPD ¶ 37,171 (5th Cir. 1987) (Vinson holds employers have an "affirmative duty to eradicate 'hostile or offensive' work environments"); Bundy v. Jackson, 641 F.2d 934, 947, 24 EPD ¶ 31,439 (D.C. Cir. 1981) (employer violated Title VII by failing to investigate and correct sexual harassment despite notice); Tompkins v. Public Service Electric & Gas Co., 568 F.2d 1044, 1049, 15 EPD 7954 (3d Cir. 1977) (same); Henson v. City of Dundee, 682 F.2d 897, 905, 15 EPD ¶ 32,993 (11th Cir. 1982) (same); Munford v. James T. Barnes & Co., 441 F. Supp. 459, 466 16 EPD ¶ 8233 (E.D. Mich. 1977) (employer has an affirmative duty to investigate complaints of sexual harassment and to deal appropriately with the offending personnel; "failure to investigate gives tactic support to the discrimination because the absence of sanctions encourages abusive behavior")[27]

When an employer receives a complaint or otherwise learns of alleged sexual harassment in the workplace, the employer should investigate promptly and thoroughly. The employer should take immediate and appropriate corrective action by doing whatever is necessary to end the harassment, make the victim whole by restoring lost employment benefits or opportunities, and prevent the misconduct from recurring. Disciplinary action against the offending supervisor or employee, ranging from reprimand to discharge, may be necessary. Generally, the corrective action should reflect the severity of the conduct. See Waltman v. International Paper Co., 875 F.2d at 479 (appropriateness of remedial action will depend on the severity and persistence of the harassment and the effectiveness of any initial remedial steps). Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307, 309-10, 44 EPD ¶ 37,557 (5th Cir. 1987) (the employer's remedy may be "assessed proportionately to the seriousness of the offense"). The employer should make follow-up inquiries to ensure the harassment has not resumed and the victim has not suffered retaliation.

Recent Court decisions illustrate appropriate and inappropriate responses by employers. In Barrett v. Omaha National Bank, 726 F.2d 424, 33 EPD ¶ 34,132 (8th Cir. 1984), the victim informed her employer that her co-worker had talked to her about sexual activities and touched her in an offensive manner. Within four days of receiving this information, the employer investigated the charges, reprimanded the guilty employee placed him on probation, and warned him that further misconduct would result in discharge. A second co-worker who had witnessed the harassment was also reprimanded for not intervening on the victim's behalf or reporting the conduct. The court ruled that the employer's response constituted immediate and appropriate corrective action, and on this basis found the employer not liable.

In contrast, in Yates v. Avco Corp., 819 F.2d 630, 43 EPD ¶ 37,086 (6th Cir. 1987), the court found the employer's policy against sexual harassment failed to function effectively. The victim's first-level supervisor had responsibility for reporting and correcting harassment at the company, yet he was the harasser. The employer told the victims not to go to the EEOC. While giving the accused harasser administrative leave pending investigation, the employer made the plaintiffs take sick leave, which was never credited back to them and was recorded in their personnel files as excessive absenteeism without

A 177