IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KARI M. (SMITH) PRILLER,        :
                                :
        Plaintiff,              :
                                :
    v.                          :   Civil Action No. 04-1286-JJF
                                :
TOWN OF SMYRNA, DAVID S.        :
HUGG, III, individually and     :
in his capacity as Town         :
Manager, BEVERLY A. HIRT,       :
individually and in her         :
official capacity as Director   :
of the Smyrna Public Library,   :
and HARVEY LEGGETT,             :
individually and in his         :
official capacity as            :
Supervisor of Streets/Foreman   :
of Public Works,                :
                                :
        Defendants.             :

William D. Fletcher, Esquire and Noel E. Primos, Esquire of
SCHMITTINGER & RODRIGUEZ, P.A., Dover, Delaware.
Attorneys for Plaintiff.

Bruce C. Herron, Esquire of
AKIN & HERRON, Wilmington, Delaware.
Attorney for Defendants.

## MEMORANDUM OPINION

May 3, 2006
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendants' Motion For Summary Judgment (D.I. 47). For the reasons discussed, the Motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff, a Caucasian female, began working for the Smyrna Public Library as a part-time library clerk in March 2001, and in July 2002, she was promoted to Children's Program Coordinator.

On December 19, 2002, Plaintiff and Defendant Harvey Leggett, an employee in Smyrna's Public Works Department, decided to meet for drinks. After each had a couple beers, they left the bar and decided to take a walk, because Plaintiff felt that she should not drive. While walking, Plaintiff and Leggett found a large plant on the side of the road, and Plaintiff decided to take it to the library. Plaintiff used her key to let herself and Leggett in the library. Leggett allegedly raped Plaintiff while in the library. Plaintiff reported the incident to the police that evening.

Following the alleged rape, Defendant David Hugg, the Town Manager, suspended Leggett with pay until charges were brought or until he was cleared of the charges. Leggett was further instructed that he was to have no contact with Plaintiff. The Town also extended Plaintiff's probationary period six months and placed Leggett on probation for entering the library without

1

permission after hours.  The Attorney General's Office declined to prosecute Leggett, and the Town conducted no independent investigation into the events that occurred at the library.

On March 10, 2003, Plaintiff discovered that Leggett was doing work outside of the library.  Defendant Beverly Hirt, the Town Library Director, asked Plaintiff to pick up books from the book drop, which was located near the area Leggett was working.  Plaintiff became upset at the prospect of being near Leggett and told Hirt that she did not want to pick up the books.  Hirt responded, "It's not like he's going to attack you or something."

The day after this incident, Plaintiff met with Hugg.  At the meeting, Plaintiff asked Hugg how she could file a sexual harassment claim.  Hugg made Plaintiff copies of the claim procedure and advised Plaintiff that she would need a lawyer.  Plaintiff ultimately decided not to file a claim because she could not afford a lawyer.  Hirt, the Library Director, expressed anger that Plaintiff had met with Hugg in notes contained in Plaintiff's personnel folder and in Plaintiff's evaluation and termination letter, stating that Plaintiff had "broken the chain of command" and was insubordinate.

On June 16, 2003, Plaintiff filed an Application For Leave, requesting a long weekend to visit with her family in Virginia.  Hirt approved the leave application with the condition that Plaintiff be present at the Reading Program on July 1.  After

receiving approval, Plaintiff discovered that Nancy Conlin, another employee who was also to be on vacation, had postponed her vacation and could fill in for Plaintiff at the Reading Program on July 1. There is a dispute as to whether Plaintiff discussed Conlin's substitution with Hirt and whether Hirt verbally consented to the replacement.

On July 7, 2003, Plaintiff was discharged from employment by Hirt. The following reasons were given for her termination:

   1. Falsifying information on a vacation slip
   2. Absent without approved leave
   3. Failed to get supervisors [sic] approval to have another employee cover your scheduled program.

On September 21, 2004, Plaintiff filed a Complaint, alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and 42 U.S.C. § 1983 ("§ 1983"). Plaintiff also alleges that Defendants violated her procedural due process rights and breached the covenant of good faith and fair dealing.

## II. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining

whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

## III. DISCUSSION

### A. Whether The Court Should Grant Defendant Leggett Summary Judgment On Plaintiff's Claim Brought Pursuant To § 1983

Leggett contends that he should be granted summary judgment on Plaintiff's § 1983 claim because the act forming the basis of Plaintiff's claim was not committed "under color of state law."[1] In response, Plaintiff contends that the rape was committed under color of state law because it occurred on Town property and while Plaintiff was engaged in work-related activities. Plaintiff further contends that Leggett was acting under color of state law by discussing the rape and what actions to take with Hirt behind closed doors.

In order to establish a claim under Section 1983, a plaintiff must show, inter alia, that the conduct complained of was committed by a person acting under color of state law. Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). Acts under color of state law include all acts committed in an official capacity. Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994). An off-duty state employee can be found to have acted in an

---

[1] Leggett also contends that he cannot be sued under Title VII because he is not an employer. However, because Plaintiff's Complaint does not include Defendant Leggett in the Title VII count and because Plaintiff does not contest Leggett's argument in her answering brief, the Court will not address it. The Court also notes that Defendants do not request summary judgment on Plaintiff's claims against Defendants Hugg and Hirt brought pursuant to Section 1983.

5

official capacity if "in committing the act complained of, [the employee] abused a power or position granted by the state." Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997); Pokalsky v. SEPTA, 2002 U.S. Dist. LEXIS 16175, at *6-13 (E.D. Pa. 2002).

The Court concludes that Leggett was not acting under color of state law at the time of the alleged rape. Leggett was not abusing his official authority or a position granted by the state when he allegedly raped Plaintiff. Both employees were off-duty and had agreed to meet outside of work for drinks. The fact that the rape took place on Town property and the fact that Plaintiff may have been performing work-related activities are not determinative of whether Leggett was acting under color of state law; rather, the Court must look to Leggett's conduct and whether he abused his position or authority.

Plaintiff cites Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999) in support of her argument that Defendant Leggett was acting under color of state law. Abraham, however, is distinguishable. Abraham involved an off-duty police officer who was called to assist another officer in confronting shoplifters. Abraham, 183 F.3d at 283. The Third Circuit Court of Appeals found state action because the officer "was wearing a police uniform, ordered [the suspect] repeatedly to stop, and sought to arrest him." Id. at 287. Here, Leggett was not performing any duties related to

6

his employment and further, was not exercising authority granted by the state.

Plaintiff also contends that the closed-door conversation between Hirt and Leggett following the rape creates an inference that Leggett had a part in determining that Plaintiff's probationary period should be extended. Plaintiff, however, offers no evidence as to the content of the conversation, and at this stage of the litigation, the Court cannot infer the existence of conversations based on Plaintiff's bald assertions. Accordingly, the Court will grant Defendants' motion for summary judgment as it relates to Plaintiff's claim against Leggett under § 1983.

    B.    <u>Whether The Court Should Grant Defendant Town Of Smyrna Summary Judgment On Plaintiff's Employment Discrimination Claims</u>

        1.    *The McDonnell Douglas Burden-Shifting Analysis*

When examining certain employment discrimination claims, a court must use the burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under this analysis, a plaintiff must first establish a prima facie case of discrimination. <u>Green</u>, 411 U.S. at 802. If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant, and the defendant must "articulate some legitimate, nondiscriminatory reason" for the treatment. <u>Id</u>. If the defendant produces a sufficient reason

for its actions, the burden shifts back to the plaintiff to demonstrate that the defendant's reasons are merely a pretext for discrimination. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). To defeat a motion for summary judgment, the plaintiff must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000).

    2.   *Plaintiff's Hostile Work Environment Claim*

In order to establish a prima facie hostile work environment claim, a plaintiff must show: (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) such discrimination would have affected a reasonable person of the same protected class in that position; and (5) respondeat superior liability. West v. Philadelphia Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995).

Reviewing the evidence and construing the facts in the light most favorable to Plaintiff, the Court concludes that no jury could reasonably find that Hirt and Hugg intentionally discriminated against Plaintiff based on her gender or race.

Plaintiff contends that Hirt and Hugg intentionally discriminated against her based on her sex and race following the alleged rape by failing to investigate Plaintiff's rape claim and by allowing Leggett to work near the library on one occasion. The Court concludes that Plaintiff has not adduced sufficient evidence that these actions were linked to Plaintiff's gender or race, and thus, Plaintiff has failed to establish the first element of a prima facie case. In the alternative, the Court concludes that these two instances do not qualify as pervasive and regular.

While the Court has concluded that Hirt's and Hugg's actions following the alleged rape were not motivated by Plaintiff's gender or race, the Court concludes that the rape itself was motivated by Plaintiff's gender, and thus, Plaintiff's Title VII hostile work environment claim must proceed to trial. First, Leggett's alleged behavior was clearly motivated by Plaintiff's gender. Second, the Court concludes that Plaintiff has satisfied the regular and pervasive element of the prima facie case. While an isolated incident of sexual misconduct generally will not satisfy the second element of the prima facie case, "[i]n exceptional cases... an isolated incident may be actionable under Title VII if it is extremely serious such that it alters the terms and conditions of employment to create a hostile or abusive work environment." Seldomridge v. Uni-Marts, Inc., 2001 U.S. Dist. LEXIS 9491, at *21 (D. Del. 2001); Faragher v. City of Boca

Raton, 524 U.S. 775, 788 (1998) ("'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). In the Court's view, the commission of a rape in the workplace is serious and could alter the conditions of employment to the extent the work environment becomes hostile and/or abusive. See e.g. Todd v. Orthobiotech, Inc., 138 F.3d 733, 736 (8th Cir. 1998). In the circumstances presented here, the Court concludes that Plaintiff has adduced evidence that she suffers from fear and anxiety and that she is unable to function productively in her job. In sum, a jury could find that it is reasonable to conclude that a woman who had been raped could be so affected.

Finally, the Court concludes that a jury could find that Plaintiff has established respondeat superior liability. "[A]n employer is liable for an employee's behavior under a negligence theory of agency 'if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually hostile work environment and failed to take prompt and adequate remedial action.'"[2] Knabe v. Bounty Corp., 114 F.3d 407, 411 (3d Cir. 1997) (quoting Andrews v. City

---

[2] Both sides cite Faragher as the basis for determining whether there is respondeat superior liability. Faragher, however, dealt with an employer's liability for a supervisor's actions and not an employer's liability for the actions of a non-supervisor.

of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990)). Management's actions are adequate if they are "reasonably calculated to prevent further harassment." Knabe, 114 F.3d at 412 (citing Saxton v. AT&T Co., 10 F.3d 526, 535 (7th Cir. 1993)).

There is no dispute that Hugg and Hirt had actual notice of the rape because both were notified by the police. The adequacy of any actions taken by Hirt and Hugg, however, is a question for the jury. A jury could reasonably find that the failure to investigate the rape was an inadequate response to Leggett's alleged sexual harassment. A jury could also find that leaving literature on a desk and informing an employee that there is a sexual harassment claim procedure are not reasonably calculated to correct or prevent harassing behavior. Finally, while Leggett was allegedly assigned to projects away from Plaintiff, a jury could reasonably find that allowing Leggett to be even in the vicinity of Plaintiff's workplace and Hirt's comments to Plaintiff were not reasonable efforts to prevent future harassment. Accordingly, the Court will deny Defendants' motion for summary judgment as it pertains to Plaintiff's claim of hostile work environment under Title VII.

3.  *Plaintiff's Claims For Unlawful Discrimination Pursuant To Title VII And Section 1981*

In order to establish a prima facie case of unlawful discrimination under Title VII and Section 1981, a plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. Green, 411 U.S. at 802; Hilliard v. Morton Bldgs., Inc., 195 F. Supp. 2d 582, 587 (D. Del. 2002). Defendants have not challenged Plaintiff's proof regarding the first three elements of the prima facie case, and therefore, the Court will accept that Plaintiff has established those elements. With regard to the fourth element, however, Defendants contend that Plaintiff has not offered sufficient evidence to demonstrate that similarly-situated individuals were treated differently than Plaintiff.

The Court concludes that Plaintiff has failed to establish an inference of discrimination. Plaintiff contends that the inference is established by the difference in treatment of Plaintiff and Leggett following the alleged rape. However, the record adduced establishes that immediately following the alleged rape, the only time at which the two can be compared, both Plaintiff and Leggett were placed on probation for being in the library after hours. Plaintiff recognizes that they both received the same punishment, D.I. 52 at 29 ("the Town

disciplined Plaintiff and Leggett as if they had committed the same offense of entering the library after hours and nothing more"), but argues that the library should have investigated the alleged rape and that Leggett's subsequent DUI conviction should have caused him to be terminated as well. At the time of Leggett's DUI, however, there was no basis for comparison because Plaintiff had not received a DUI and because Plaintiff was not working under the same supervisor as Leggett. Because Leggett and Plaintiff received the same punishment for entering the library after hours, the Court concludes that Plaintiff has not established that Leggett was treated more favorably. Thus, the Court concludes that no inference of discrimination has been demonstrated. Accordingly, the Court will grant Defendants' motion for summary judgment as it pertains to Plaintiff's claims for unlawful discrimination under Title VII and § 1981.

    C.    <u>Whether The Court Should Grant Defendant Town of Smyrna Summary Judgment On Plaintiff's Claim For Retaliation</u>

A claim for retaliation is analyzed in three stages. First, a plaintiff must establish a prima facie case of retaliation, which requires the plaintiff to show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494 (3d Cir. 1997).

13

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate non-discriminatory reason for the adverse action. <u>Williams v. Philadelphia Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760 (3d Cir. 2004). Finally, if the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the allegedly legitimate reasons offered by the defendant were not its true reasons, but a pretext for discrimination. <u>Id</u>.

Construing the facts presented here in the light most favorable to Plaintiff, the Court concludes that a jury could reasonably find that Plaintiff has established a prima facie case of retaliation. First, Plaintiff asserts that she engaged in protected activities by filing a complaint with the police and by complaining to Hugg. <u>Zelinkski v. Pennsylvania State Police</u>, 108 Fed. Appx. 700, 705 (3d Cir. 2004). Second, Plaintiff has established she was subjected to an adverse employment action in that she was placed on probation and then discharged. Third, Plaintiff has demonstrated the existence of a causal connection between her conversation with Hugg and the adverse action sufficient to survive a motion for summary judgment. Specifically, the day after Plaintiff's discussion with Hugg, Hirt placed a note in Plaintiff's file stating that Plaintiff had "broken the chain of command" by going to Hugg and not to Hirt. (D.I. 52 at B-153). Also, an April 2003 employee progress report

14

written by Hirt comments on Plaintiff's breaking the chain of command. (D.I. 52 at B-163). Finally, the termination letter sent to Plaintiff indicates that insubordination was one of the reasons for her termination. (D.I. 52 at B-171). Because these actions all link back to Plaintiff's protected activity of speaking to Defendant Hugg, the Court concludes that Plaintiff has established a causal connection.

In response, Defendants have offered a legitimate nondiscriminatory reason for Plaintiff's being placed on probation and for her discharge, specifically, that there were concerns with Plaintiff's performance, she entered the library after hours, and the alleged falsification of a vacation slip. Plaintiff has, however, as discussed above, put forth evidence from which a jury could reasonably find by a preponderance of the evidence that her "insubordination" played a role in her termination. Plaintiff has also put forth evidence that Town employees were permitted to enter their places of employment after hours (D.I. 52 at B-107) and that there was no falsification of her vacation slip because Hirt knew the circumstances of her vacation leave (D.I. 52 at B-43-44). Accordingly, the Court will deny Defendants' motion for summary judgment as it pertains to Plaintiff's claim of retaliation.

D.  Whether The Court Should Grant Defendants Summary Judgment On Plaintiff's Due Process Claim

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. Thus, in determining whether there has been a due process violation, a court must first consider whether there has been a deprivation of life, liberty, or property. Thomas v. Town of Hammonton, 351 F.3d 108, 113 (3d Cir. 2003). A public employee has a protected property interest in employment only if she can demonstrate a "legitimate claim of entitlement" to the position. Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1318 (3d Cir. 1997). However, the fact that a plaintiff is at-will or a probationary employee is fatal to a plaintiff's claim. Thomas, 351 F.3d at 113.

Plaintiff contends that her due process rights were violated by the Town's failure to investigate the alleged rape and by the Town's failure to provide Plaintiff with a grievance process upon termination. As to Plaintiff's claim that her due process rights were violated by the Town's failure to investigate, the Court concludes that Plaintiff had neither a property nor a liberty interest in an investigation. Plaintiff cites Bouton v. BMW of N. America, 29 F.3d 103 (3d Cir. 1994), for the proposition that an employer's "[f]ailure to investigate and remediate will result in employer liability." Bouton, 29 F.3d at 107. Bouton, however, did not discuss employer liability for a due process

16

violation. Rather, Bouton held that an employer must investigate and take remedial action or it will be held liable under Title VII for a hostile work environment. The Court has already addressed the Town's liability under Title VII and cannot recognize a due process claim out of what is actually a Title VII claim.

The Court also concludes that Plaintiff did not have a protected property interest in her employment, and therefore, the Town's failure to provide Plaintiff with a grievance procedure was not a violation of Plaintiff's procedural due process rights. Thomas, 351 F.3d at 113. Town employees are subject to an initial probationary period of three to six months. (D.I. 50 at A-77). Plaintiff was on probation and following the alleged rape, Plaintiff's probation was extended for an additional six months, which is permitted by the Town Personnel Policy. (D.I. 50 at A-78). The same Policy provides that probationary employees may be dismissed at any time upon recommendation to the Town Manager, making Plaintiff an at-will employee. (D.I. 50 at A-78). Accordingly, the Court will grant Defendants' motion for summary judgment as it pertains to Plaintiff's procedural due process claim.

E.   Whether The Court Should Grant Defendants Summary Judgment On Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Every employment contract entered into in Delaware includes an implied covenant of good faith and fair dealing. <u>Merrill v. Crothall-American, Inc.</u>, 606 A.2d 96, 101 (Del. 1992). The implied covenant is breached by "an act or acts of the employer manifesting bad faith or unfair dealing achieved by deceit or misrepresentation in falsifying or manipulating a record to create fictitious grounds to terminate employment." <u>E.I. DuPont de Nemours & Co. v. Pressman</u>, 679 A.2d 436, 443-44 (Del. 1996).

Reviewing the evidence in the light most favorable to Plaintiff, the Court concludes that there are genuine issues of material fact, and thus, the claim must be decided by a jury. So far as the Court can tell, the primary reason given by Defendants for Plaintiff's discharge was the alleged falsification of a vacation leave slip. There is no dispute that Plaintiff had requested leave and was told that she was required to be present at the Summer Reading Program. Plaintiff, however, contends that Nancy Conlin was available to conduct the Reading Program, she informed Hirt, and Hirt orally consented to the replacement. (D.I. 52 at 43-44). If the jury finds that Hirt consented to the replacement for Plaintiff, the jury could also find that Hirt falsified information in the records involved in Plaintiff's termination. Because there is a dispute as to the events

18

surrounding Plaintiff's leave request, the Court will deny Defendants' motion for summary judgment as it relates to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

## IV.   CONCLUSION

For the reasons discussed, Defendants' Motion For Summary Judgment (D.I. 47) will be granted in part and denied in part.

An appropriate Order will be entered.